558 So.2d 320 (1990)
James LLORENCE, et al., Plaintiffs-Appellees,
v.
STATE of Louisiana, DEPARTMENT OF TRANSPORTATION AND DEVELOPMENT, Defendant-Appellant.
No. 88-1143.
Court of Appeal of Louisiana, Third Circuit.
March 14, 1990.
*321 Robert L. Oliver, Baton Rouge, and Stafford, Stewart, Kay Michels, Alexandria, for defendant-appellant.
Brittain, Williams, Jack O. Brittain, Natchitoches, for plaintiffs-appellees.
Before DOMENGEAUX, C.J., and GUIDRY and YELVERTON, JJ.
DOMENGEAUX, Chief Judge.
Mr. and Mrs. James E. Llorence, Sr. filed this wrongful death suit against the Department of Transportation and Development (DOTD), after two of their children, Bryan, 17, and Florence Ann, 16, were killed in a one-car accident on Louisiana Highway 493 near Melrose, Louisiana.
After trial on the merits, the district judge concluded DOTD's negligence was the sole cause of the accident. He awarded each parent $150,000.00 for the loss of each child, plus special damages of $12,719.18, for a total award of $612,719.18. From this judgment, all parties have appealed.
This accident occurred on November 12, 1984, at approximately 8:45 p.m. While driving eastbound on Highway 493, Bryan Llorence lost control of his father's 1975 Oldsmobile Cutlass. His sister Florence Ann was also in the car. After spinning across the westbound lane, the Llorence vehicle struck the west concrete abutment of the Melrose Bridge. The car then vaulted into the air and traveled an additional 140 feet along the bridge railing before it plunged into the Cane River. Bryan and Florence Ann drowned.
Highway 493 is a two-lane blacktop road. An eastbound driver would encounter a gradual right hand curve just before the road intersects with Louisiana Highway 484, a north-south blacktop road that runs along the banks of the Cane River. The intersection is slightly offset, with the south section of Highway 484 closer to the river than the north section. Just beyond the intersection is the Melrose Bridge, a steel and concrete structure built in the 1940's. The posted speed limit for this section of Highway 493 is 55 miles per hour.
At trial the parties presented conflicting evidence regarding the path taken by the Llorence vehicle before it struck the concrete abutment. Two eyewitnesses testified the car went out of control when it struck a patch of loose gravel at or near the intersection of Highways 493 and 484. DOTD claimed Bryan lost control of his vehicle when, due to his excessive speed, he failed to negotiate the curve in Highway 493. It presented expert testimony which indicated the vehicle left the traveled portion of the highway as it exited the curve, well before the intersection, and it continued out of control along the left hand shoulder of Highway 493 until it struck the Melrose Bridge.
In written reasons for judgment, the trial judge found DOTD negligent in failing to remove the accumulation of gravel, which created an unreasonable risk of harm, and in failing to install guard rails at the base of the Melrose Bridge. He did not discuss the question of strict liability. The trial court failed to assess any fault to the driver, accepting the testimony of two eyewitnesses who estimated his speed at approximately 55 miles per hour.

LIABILITY OF DOTD
The jurisprudence defining DOTD's duty to the motoring public was succinctly summarized by this Circuit in Melder v. State, through Department of Highways, 512 So.2d 546 (La.App. 3rd Cir.1987):
DOTD's duty to travelers on state highways under La.C.C. art. 2315 is well settled. DOTD has a duty to construct and maintain the state's highways in a condition reasonably safe for persons using ordinary care and prudence. DOTD is not responsible for every accident which occurs on state highways, nor is it a guarantor of the safety of travelers or an insurer against all injury which may result from obstructions or defects in the highways. DOTD will be held liable, under the provisions of La.C.C. art. 2315, when the evidence shows that the condition complained of presented an unreasonable risk to prudent drivers and DOTD had actual or constructive notice *322 of the defect and failed to correct it within a reasonable time. [Citations omitted].
Under a strict liability theory of recovery (La.C.C. art. 2317), a plaintiff must establish that (1) the thing which caused the damage was in the care or custody of the defendant; (2) the thing had a vice or defect which caused an unreasonable risk of injury to another; and (3) the injury complained of was caused by the vice or defect. [Citations omitted].
La.R.S. 9:2800, which greatly limits the liability of the State under article 2317, is applied prospectively only. Landry v. State, 495 So.2d 1284 (La.1986). Because this accident occurred before July 12, 1985, the effective date of La.R.S. 9:2800, the statute has no application to this case. However, because we conclude, for the reasons assigned below, that the trial court correctly decided the case under the theory of negligence, we need not discuss the question of strict liability.
Billy Ray Hatchett, one of the two eyewitnesses, was sitting in a parked car on the right shoulder of Highway 493 near its intersection with Highway 484. Wilbert Moody, the other eyewitness, was standing near the Hatchett vehicle. Both Hatchett and Moody testified they saw the Llorence vehicle as it came around the curve on Highway 493. Both testified that the car was still under the driver's control at this point, with its headlights pointing toward the Melrose Bridge. Hatchett testified he heard the car hit some gravel as it approached the intersection. He then saw the car slide out of control. Moody testified he heard gravel popping against the car's fenders as it began "to fishtail" near the intersection. He stated he did not see the car go onto the shoulder until it began to spin. Both witnesses estimated the vehicle's speed at approximately 50 to 55 miles per hour.
Plaintiffs produced several witnesses, familiar with the general area, who testified that a large amount of gravel had accumulated on the north portion of Highway 484 near its intersection with Highway 493. They explained that traffic from heavy farm equipment and other vehicles tracked the gravel into the intersection and along the traveled portion of Highway 493. Anthony Moran, of the Natchitoches Parish Sheriff's Department, testified he was aware of the rock buildup on Highway 484, but that he knew of no concentration of gravel on 493. Trooper Ronald L. Dowden, who investigated the accident, testified he observed gravel on Highway 484, but not on Highway 493. However, both eyewitnesses testified the gravel was scattered around the entire intersection and was not confined to Highway 484 on the night of the accident.
Mr. Duaine Evans, accepted by the court as an expert in accident reconstruction and traffic engineering, testified on behalf of the plaintiffs. He explained the presence of gravel on a blacktop road creates a hazardous condition by reducing the surface co-efficient of friction, which causes a vehicle's tires to lose traction. When he visited the accident scene he saw no gravel on Highway 493, but observed a significant amount of gravel in the intersection.
In his opinion, the vehicle may have been in a slight rotation before it got to the intersection. However, when it hit the gravel at or near the intersection, the car began to rotate considerably. At this point, the driver lost control because he did not have enough traction to stop the rotation.
State Trooper Ronald L. Dowden, who investigated this accident, was accepted by the court as an expert in the field of accident investigation. Based upon tire prints on the shoulder of the road, and not upon skid marks, he concluded the vehicle left the highway approximately 370 feet from the bridge, at the exit of the curve on Highway 493.
Dr. Joseph Blaschke, accepted by the court as an expert in accident reconstruction, testified on behalf of DOTD. Relying on Trooper Dowden's report and photographs taken the day after the accident, he concluded the vehicle left the road 166 feet before it reached the intersection. He admitted the blacktop on Highway 493 was "at the end of its life," but he found no *323 defect in the road that would have caused the vehicle to spin into the westbound lane. Rather, he concluded the sole cause of the accident was the driver's excessive speed, which he estimated at 70 to 75 miles per hour.
There is no dispute that Highway 493 was under the custody and control of DOTD. In written reasons, the trial judge concluded the gravel had been allowed to accumulate for such a length of time that the State knew or should have known of its existence. After a review of the record, we cannot say this finding is manifestly erroneous. Under article 2315, the two remaining questions are whether the buildup of gravel on Highway 484 created an unreasonable risk of harm to travelers on Highway 493, and if so, whether this risk of harm was the cause in fact of the accident.
DOTD relies on Duffy v. State, through Department of Transportation and Development, 415 So.2d 375 (La.App. 1st Cir. 1982), writ denied, 420 So.2d 448 (La.1982) in arguing the presence of gravel on Highway 493 was not an unreasonably dangerous condition. In Duffy, the court concluded that an accumulation of gravel on a gravel road during grading operations by the State did not create an unreasonable risk of harm, where the presence of gravel was only temporary, the State derived substantial utility from the grading operations and the evidence established the driver was familiar with the road conditions.
Unlike Duffy, the instant case involves the presence of gravel on a blacktop road. The hazardous nature of this condition was thoroughly explained by plaintiffs' expert, Mr. Evans. See also Schexnayder v. State, 477 So.2d 1175 (La.App. 1st Cir. 1985). Witnesses testified the gravel had been allowed to accumulate over several years, establishing this was not a temporary condition. Finally, there was no evidence introduced to show how often Bryan Llorence, the 17 year old driver, had traveled on this road. We therefore find no manifest error in the trial judge's finding that the presence of this gravel created an unreasonably dangerous condition, which DOTD should have remedied, or at least warned against, under its duty to maintain public highways in a reasonably safe condition for prudent motorists. Schexnayder, supra.
In written reasons, the trial judge found a significant amount of gravel had been tracked onto Highway 493 from Highway 484, and that this gravel caused Llorence to lose control of his vehicle. We will not disturb a trial court's factual findings unless the record establishes the findings are clearly wrong. Arceneaux v. Domingue, 365 So.2d 1330 (La.1978). In concluding the presence of this gravel was the cause in fact of the accident, the trial judge obviously accepted the testimony of the eyewitnesses over the explanations offered by defendant's experts. Trooper Dowden, who testified for DOTD, stated his conclusion that the vehicle exited the roadway at the curve rather than at the intersection was based on tire tracks found on the shoulder of Highway 493. However, the eyewitnesses testified that cars began parking on both shoulders of the road as far back as the curve almost immediately after the accident. This testimony presents some uncertainty as to whether the tracks observed by Trooper Dowden were made by the Llorence vehicle. Under these circumstances, we cannot say the trial court was manifestly erroneous in accepting the eyewitness testimony.
The trial court also found DOTD negligent in failing to install a guard rail at the base of the Melrose Bridge, although the basis of this finding was not clearly articulated in his reasons for judgment. Having affirmed the trial court's finding of negligence for the failure to remove, or to warn against the hazardous condition created by the presence of the gravel, we see no reason to discuss this additional basis of liability.

COMPARATIVE FAULT
DOTD contends the trial court was clearly wrong in failing to apportion any fault to the young driver, Bryan Llorence. We must agree.
*324 In finding no evidence of excessive speed, the trial court relied on the two eyewitnesses who estimated Llorence's speed at approximately 50 to 55 miles per hour. While these witnesses could properly testify as to the path of the vehicle, we do not believe they were in a position to give an exact estimate of its speed. They were observing the vehicle's approach from a fixed point, and they had only a glimpse of the car rounding the curve before it went out of control. We find the trial court committed clear error in giving undue weight to this testimony. See Scruggs v. McCraney, 234 So.2d 262 (La.App. 4th Cir.1970).
Dr. Blaschke, the defendant's expert, admitted it would be difficult to calculate, with any degree of accuracy, the vehicle's speed in this case. Although the vehicle's exact speed may not be determined, from the record, it is clear Llorence was traveling at an excessive rate. Photographs revealed that approximately three feet of concrete was removed from the abutment upon impact. Trooper Dowden testified he observed fresh scratches and other damage for 140 feet along the bridge railing, indicating to him that the vehicle continued to travel that length after it struck the bridge. Trooper Dowden testified the front hood of the car lodged in a tree 50 feet from the bridge. Photographs also showed extensive damage to the vehicle. The record clearly supports a finding that the driver's excessive speed substantially contributed to this accident.
Applying the factors articulated in Watson v. State Farm Fire and Casualty Insurance Company, 469 So.2d 967 (La. 1985), we assess 50% comparative fault against the driver, Bryan Llorence. In choosing to ignore the speed limit, Llorence proceeded with an awareness of danger. His conduct created a grave risk of harm to himself, his passenger and to the general public. No extenuating circumstances were offered in justification, or even as an explanation, of his conduct.

QUANTUM
Both parties have appealed the trial court's award of damages. In determining whether a damage award is excessive or inadequate, an appellate court is bound by the well known two tier analysis of Reck v. Stevens, 373 So.2d 498 (La.1979):
Before a trial court award may be questioned as inadequate or excessive, the reviewing court must look first, not to prior awards, but to the individual circumstances of the present case. Only after analysis of the facts and circumstances peculiar to this case and this individual may a reviewing court determine that the award is excessive.
Before awarding each parent $150,000.00 for the loss of each child, the trial court outlined the following findings of fact:
Turning now to the issue of damages, the court notes that the Llorences were a very close knit family and that the parents, who are the plaintiffs herein, were dependent upon their children for emotional support as well as for physical help in their everyday life; in particular, the medical problems of the mother of these children made her particularly dependent upon the children for both physical help and emotional support. Mrs. Llorence was at the time of this accident, and continues to be, a severely handicapped stroke victim. Mr. Llorence is a truck driver and had to be away much of the time in order to provide for his family. As a result these children were almost solely responsible for caring for their mother and providing her with the constant love and affection she so badly needed. The poor physical health of the mother of these children was worsened by this tragic accident. It is generally accepted that one of the worst tragedies a human being can be subjected to is the loss of a child. In this particular case, the loss was made even worse by the fact that these parents lost two of their four children at one time and they lost their only daughter. The evidence showed that this was a very close knit family and that the parents attended church with their children, visited relatives as a family and engaged in other recreational activities as a family. It *325 was obvious to the court during the testimony of these parents that the passage of more than three years since the loss of their children have done little to soften the impact of that loss.
The trial court's findings are supported by the record. The parents have demonstrated that their emotional and physical dependency on these children, largely due to the health of Mrs. Llorence, was beyond that of a normal parent-teenager relationship. We do not find a $150,000.00 award for the loss of each child under the circumstances of this case is an abuse of the trial judge's discretion. Under the jurisprudence we conclude that the award is neither inadequate nor excessive. See Acy v. Aetna Casualty & Surety Company, 499 So.2d 262 (La.App. 1st Cir.1986), writ denied, 503 So.2d 16 (La.1987), and the cases cited therein. Johnson v. Georgia Casualty & Surety Company, 488 So.2d 1306 (La.App. 3rd Cir.1986), writs denied, 493 So.2d 1123, 1224 (La.1986).
Damages awarded for the wrongful death of Bryan Llorence must be reduced by his percentage of comparative fault. Douget v. Allen Parish Police Jury, 520 So.2d 813 (La.App. 3rd Cir.1987). The death of Florence Ann Llorence was caused by the concurrent negligence of Bryan Llorence and DOTD. Under La.C.C. art. 2324, as it read at the time of the accident, DOTD is solidarily liable for any damages awarded for her death. Holmes v. State, through Department of Highways, 466 So.2d 811 (La.App. 3rd Cir.1985).

DECREE
For the above and foregoing reasons, we amend the judgment in favor of Mr. and Mrs. James E. Llorence as follows: the award for the loss of Bryan Llorence is reduced by one-half; the award for the loss of Florence Llorence is affirmed. In all other respects, the judgment is affirmed.
AFFIRMED AS AMENDED.