571 So.2d 201 (1990)
Blanchard L. DUBOIS, Plaintiff-Appellee,
v.
STATE FARM INSURANCE COMPANY, et al., Defendants-Appellants.
No. 89-538.
Court of Appeal of Louisiana, Third Circuit.
November 30, 1990.
Writs Denied February 8, 1991.
*202 Donald G. Kelly and Wm. L. Townsend, Natchitoches, for plaintiff-appellee.
Percy, Smith, Foote & Honeycutt, John B. Honeycutt, Jr., Alexandria, Brittain, Williams, McGlathery & Passman, J. Morgan Passman, Natchitoches, for defendant/appellant Audubon, USFI.
Provosty, Sadler & Delaunay, David P. Spence, Alexandria, Robert Oliver, Baton Rouge, for defendant/appellant State, Dotd.
Lunn, Irion, Johnson, Salley & Carlisle, James A. Mijalis and Charles W. Salley, Shreveport, for defendant/appellant Craven.
Harrington & Harrington, C. Rodney Harrington, Watson, Murchison, Crews, Arthur & Corkern, Wm. P. Crews, Jr., Joseph B. Stamey, Natchitoches, for defendants/appellees.
Before DOMENGEAUX, C.J., and STOKER and YELVERTON, JJ.
YELVERTON, Judge.
This appeal arises from a judgment awarding personal injury damages to two persons, Blanchard Dubois and Glynda Vercher, following an automobile accident involving three vehicles which occurred on August 22, 1985, on Louisiana Highway 1 in rural Natchitoches Parish. The appellants herein are Albert Craven and his insurer, Zurich Insurance Company, against whom judgment was rendered based upon a finding a fault of 20%; the State of Louisiana, Department of Transportation *203 and Development (DOTD), whose apportionment of fault was found to be 80%, and U.S. Fire Insurance Company and Audubon Indemnity Company, the primary and excess insurers found to have provided underinsured motorist coverage for Blanchard Dubois. For his injuries, Blanchard Dubois was awarded a total of $738,000, and for her injuries, Glynda Vercher was awarded a total of $104,500.
The case against the private defendants was decided by a jury, and the case against the DOTD was decided by the trial judge. The triers of fact agreed on apportionment of fault and damages.
The case is before us on two appeals, one from a directed verdict decreeing UM coverage in favor of Dubois by U.S. Fire and Audubon, and the other from the remaining issues in the case. The procedural explanation for why there were two judgments is that there was a mistrial declared the first time this case went to trial but only after a directed verdict had been rendered concerning the insurance coverage issue. The mistrial occurred when a juror got sick and the attorneys could not agree on the mechanics for a verdict. An appeal was taken from that directed verdict. The judgment rendered after the second trial is the subject of the second appeal. We have consolidated these appeals in this court. This opinion resolves both appeals. We are rendering a separate judgment today in Dubois v. State Farm Insurance Company, 571 So.2d 208 (La.App. 3d Cir.1990).
In discussing the contentions of the appellants we will deal first with the general subject of liability; next we will treat the errors claimed to have been made in the assessment of damages; third we will discuss the question of whether La.R.S. 13:5106 is retroactive or prospective in application; thereafter, we will address the errors assigned regarding the instructions to the jury and the special verdict form, and, finally, the interest award.
It is unnecessary that we discuss the issues of whether Blanchard Dubois had UM coverage for this accident, and the cross-claims of U.S. Fire and Audubon. These issues are moot, because we shall find, as we will explain later in this opinion, that the "cap" on the amount recoverable in general damages from the DOTD is not applicable in this case.

LIABILITY
The accident happened at 7:45 in the morning. Blanchard Dubois was going north on two-laned Highway One. Ahead of Dubois going in the same direction was Albert A. Craven, driving a Ford LTD towing a fishing boat. Craven planned to turn right onto intersecting state Highway 493 to go to Cane River to fish, and was in the process of making the turn when he remembered that he needed ice. Fuller's Grocery was a little ahead and on the left. Craven pulled back on the highway and immediately started a left turn.
Glynda Vercher was then going south on the highway. She saw the Craven Ford turning right, then left, in front of her and, believing that a collision was imminent unless she did something, she went on the shoulder to avoid the Ford. Her reentry was not successful and she collided head-on with Dubois' pickup truck.
For more detail, we quote from the lucid reasons for judgment given by the trial judge:
As Mr. Dubois proceeded northward on La. Hwy. One at a speed of approximately 45 mph, Mr. Craven was also proceeding northward on La. Hwy. 1 operating a full sized Ford LTD automobile and towing a boat. At the same time and place, Mrs. Glynda Vercher was operating a small car and was proceeding southward on La. Hwy. 1 at approximately 45 mph. Mr. Craven apparrently [sic] did not see the approaching Vercher vehicle and made a left turn into Mrs. Vercher's lane of traffic partially blocking that lane of traffic. The negligence of Mr. Craven in so doing, was the first in a series of events which led to this serious automobile accident. Although Mr. Craven was negligent in making a left turn into Mrs. Vercher's lane of traffic nothing serious would have happened had the highway shoulders been in the state of repair required by law. Mrs. Vercher took the *204 proper evasive action in that she steered her vehicle to the right and onto the shoulder of the road so that she could have gone around Mr. Craven's vehicle on the right. She succeeded in this evasive maneuver in that she missed the vehicle of Mr. Craven which the court finds to have been blocking one-half of her lane of traffic, but when she reached the north entrance to Fuller's Grocery and got onto the hard surfaced shoulder at that point, that shoulder was littered with loose gravel of varying sizes which caused her car to rotate with the result that she lost control and spun out of control and across the southbound lane and into the northbound lane striking the vehicle of Mr. Blanchard Dubois.
* * * * * *
The jury apparently was of the opinion that the initial negligence of Mr. Craven in making the left turn set the series of events in motion but apparently felt that Mrs. Vercher could have avoided a collision had she not encountered the uneven drop-off from the highway to the shoulder and the loose material on the shoulder. The jury returned with a verdict which found Mr. Craven 20 percent at fault and the Louisiana Department of Transportation and Development 80% at fault and Mrs. Vercher 0% at fault. The court adopts that finding as its own and assigns 80% of the negligence to the Louisiana Department of Transportation and Development.
The DOTD disputes the finding of its negligence, and the assessment of its percentage of fault. Craven and his insurer make the same attacks on the finding of their liability. Both the DOTD and Craven complain about the failure of the judge and the jury to find Vercher at fault.
The DOTD's negligence consists mainly in permitting the abundance of loose gravel on the asphalt portion of the shoulder at the point where the witnesses say Vercher lost control. There were a number of witnesses who testified to the presence of an accumulation of loose gravel on the asphalt shoulder. These included Vercher, Craven, and the investigating state police officer. Moreover, there was testimony by the highway maintenance superintendent, whose job included inspection of Louisiana Highway One and its shoulders, that he passed along the road twice a day going to and from work. We are not persuaded that any error was made in the finding of fact that there was a large accumulation of gravel on the asphalt shoulder and that it was in this gravel that Vercher lost control. It also appears to have been there a long time. It is negligence for the DOTD to fail to maintain shoulders in a reasonably safe condition. Sinitiere v. Lavergne, 391 So.2d 821 (La.1980). The accumulation of gravel on a black-topped surface may present an unreasonable risk of harm to travelers. Llorence v. State, Department of Transportation and Development, 558 So.2d 320 (La.App. 3d Cir. 1990); Grappe v. State, Department of Transportation and Development, 462 So.2d 1337 (La.App. 3d Cir.), writ denied, 466 So.2d 1302 (La.1985). The evidence reveals that the state knew or should have known of the danger. The evidence further shows that the presence of the gravel was the cause-in-fact of Dubois' accident. We have no hesitation in agreeing with the finder of fact's conclusion that the DOTD was at fault in causing this accident.
The finding of fault of Craven was also clearly right. He admitted that when Vercher left the highway, his car was pointed at a 45° angle crossing the highway as he was making a left turn to Fuller's Grocery. He denied that his car had entered Vercher's lane of travel. Vercher, on the other hand, testified that the front of the Craven Ford was halfway into her lane of travel. It hardly matters where exactly the Craven car was when Vercher took to the shoulder. By all accounts the Craven car was headed into her lane, intent on crossing the road. Craven was at fault, and his conduct caused Vercher to take to the shoulder to avoid an imminent collision.
As the trial judge articulated, and as the jury likewise found, the DOTD's fault was far greater than that of Craven. Uppermost in the mind of the trial judge was the consideration that had the shoulder been *205 reasonably safe, this accident would have been avoided by the alert response that Vercher made to the emergency. We can perceive no error in the apportionment of fault, 80% to the DOTD and 20% to Craven.
Finally, on the issue of liability, the DOTD and Craven complain of the failure to find Vercher at fault in causing the accident, and assigning a percentage of fault to her conduct. The argument was made that Vercher was driving too fast, without lights, under foggy conditions, and that her loss of control was due to her own conduct. There is no evidence to support any of these arguments. The accident happened close to 8 o'clock on an August morning, and it was good daylight. If fog existed on the highway at the exact time of the accident, it did not interfere with the vision of either Craven or Vercher, as the testimony of both reveals that they had each other in view at the critical times. Vercher testified that she was traveling within the speed limit. Craven's opinion was that she was exceeding the speed limit. The finders of fact made a credibility decision in this regard. Moreover, even Craven testified that when Vercher left the highway, she had control of her car. It was not until she encountered the loose gravel that she lost control.
It is argued that it was reversible error for the trial court to refuse to give requested jury instructions, concerning Vercher's conduct, regarding the presumption that the driver in the wrong lane at the time of a collision is negligent, as well as the law regarding vehicle lighting and vehicle speed. We will respond to these objections by stating that even if the failure to include these instructions was error, the outcome of the case would be no different. This is so because we have the record before us, and if we were to find that there were erroneous charges to the jury such as to require setting the jury verdict aside, we would then be required, under La.C.C.P. art. 2164, to render a judgment on the record. Our judgment regarding Mrs. Vercher's liability, taking into account the law embodied in the requested charges, would be no different from what the jury and the trial judge found, on these facts.

DAMAGES
The jury made the following itemized award to Dubois:

Physical injuries, scarring and
 disfigurement $150,000
Pain and suffering, both physical
and mental 300,000
Permanent disability 225,000
Medical expenses, past and future 63,000
 ________
 TOTAL $738,000

The trial court, in finding the DOTD liable and assessing damages agreed with the jury's award, albeit somewhat reluctantly, stating that in all probability it would have fixed the damages higher, had it alone fixed damages in the case. The trial judge had this to say in justification of the award:
Mr. Dubois suffered severe lacerations to the forehead, an acetabular fracture of the left hip, a rupture of the small intestine, (which caused severe internal bleeding which nearly resulted in his death) a fracture of his left ankle and muscular sprains and soft tissue injuries too numerous to mention. His injuries have required a total of 30 days of hospitalization and two surgeries prior to this time. The acetabular fracture has not responded well and is going to require another surgical procedure in which the natural socket and ball of the hip will have to be replaced with a prosthesis.
* * * * * *
Two feet of intestine had to be removed in the process of stopping the internal bleeding. His recovery was long and slow, but considering his age and the seriousness of his injuries, he was most fortunate to have lived. Mr. Dubois had always been very active physcially [sic] and these serious injuries have greatly reduced the quality of his life as well as causing him to live in constant pain. He remembered nothing of the first five days following this accident. He has substantial disability as a result of this accident which is spelled out in the testimony *206 of the various doctors who treated him. He still faces another painful operation to replace the injured hip joint. He likewise has scarring and disfigurement which will be with him for the rest of his life, particularly on the forehead and the full length of his chest, stomach and abdomen where he was opened up for emergency surgery following the accident.
The jury awarded Mrs. Vercher a total of $104,500. Accepting this award as a fair measure of her damages, the trial court had this to say:
Turning now to the damages awarded to Mrs. Vercher the court notes that Mrs. Vercher had a severely broken nose plus numerous sprains, bruises and soft tissue injuries. Mrs. Vercher was young and in a good state of general health and she recovered from the various sprains and soft tissue injuries within a few weeks with no lasting effects. However, the severely broken nose required surgical intevention [sic] simply to try to realign [sic] the numerous broken bones in the nose in order to reach a good cosmetic result. The numerous bone fragments made this a difficult job even for the skilled surgeon who performed the procedure. Although he was able to save most of the bony fragments and return the nose from the flattened out and pushed aside configuration back to a normal looking nose the septum remains deviated and a bony fragment causes her to have a small, but noticeable knot on her nose. The deviated septum is not noticable [sic] since it is inside the nose but it is the primary problem for Mrs. Vercher in that it hinders her normal breathing and has caused her to have continuous sinus headaches which her physician attributes to the difficulty in breathing. In order to correct the deviation in the septum to give her relief from headaches and also to remove the unattractive knot on her nose she will have to undergo the same painful procedure again. She has the difficult decision to make as to whether she wants to undergo a couple of weeks of severe pain of the surgical procedure and recovery or if she wants to continue with the taking of antihistamines on a regular basis in order to get free breathing and continue with the unattractive knot on her nose. The jury considered all of these injuries as well as the continuing difficulty in breathing and headaches and awarded Mrs. Vercher Four Thousand Five Hundred and 00/100 ($4,500.00) for past and future medical expenses, Fifty thousand ($50,000.00) for physical injuries, scarring and disfigurement and Fifty [thousand] and 00/100 ($50,000.00) dollars for pain and suffering, both physical and mental. The court believes there was sufficient basis to award damages in these amounts and the court adopts these damage awards as its own.
The defendants contend on appeal that these awards are excessive. We find that they are not, and we affirm them. The record does not clearly reveal an abuse of discretion in either award. Reck v. Stevens, 373 So.2d 498 (La.1979).

RETROACTIVITY OF LA.R.S. 13:5106(B)(1)
La.R.S. 13:5106(B)(1) limits the amount recoverable in general damages in suits for personal injuries from a state agency or political subdivision to $500,000. The limitation was enacted in 1985 with an effective date of September 6, 1985. The accident in this case happened on August 22, 1985. The case went to trial and judgment was rendered after the effective date of the act establishing the limitation on recovery.
The trial judge rejected the argument by the DOTD that the limitation should retroactively apply to this case. The DOTD re-urges the argument in this court, relying on three Louisiana Fourth Circuit decisions: Mullet v. State, through DOTD, 539 So.2d 897 (La.App. 4th Cir.), writ denied, 541 So.2d 1390 (La.1989); Socorro v. Orleans Levee Board, 561 So.2d 739 (La.App. 4th Cir.1990); and Bernard v. State, through DOTD, 563 So.2d 282 (La.App. 4th Cir.1990).
This circuit has not previously considered this issue. We have examined the analysis *207 of the law made by the Fourth Circuit in the above cited three decisions, and we do not agree with that analysis.
In a recent decision rendered by another panel of this circuit, we decided that an amendment decreasing the state's obligation to pay interest, passed before judgment was rendered and signed, but after the cause of action arose, was substantive in nature and could only be applied prospectively. Our case was State of Louisiana, Department of Transportation and Development v. Anderson, 568 So.2d 657 (La.App. 3d Cir.1990).
What was before us in Anderson was a change in La.R.S. 48:455 providing for legal interest on expropriation awards. An amendment in 1988, after the taking but before judgment granting an award in an amount greater than the deposit, would have had the effect of reducing the amount of interest owed by the state on the amount of the excess award, if the amendment was applicable to that case. In concluding that the amendment could not be applied retroactively, we recognized that there was a split in the circuits on that precise issue. We chose to follow the view that the provision for recovery of interest in La.R.S. 48:455 established a right, as opposed to providing a procedural or adjective law prescribing a method of enforcing rights or obtaining redress for their invasion.
Consistent with the view expressed in Anderson, this panel finds that the limitation on recovery expressed by the amendment incorporated into La.R.S. 13:5106(B)(1) is a substantive law, and cannot be applied to the present case. The jury and the judge in this case found that as a result of his August 22, 1985, accident, Dubois' damages recoverable from the DOTD was $540,000 in general damages suffered on account of the state's wrongdoing. If this amendment, passed after the accident, is permitted to apply, Dubois' right to recover is limited to $500,000. Thus, the amendment is a substantive law. It limits a right, rather than merely providing a procedural or adjective provision prescribing a method of enforcement of the right or obtaining redress for its invasion. We conclude that the limitation amendment applies only to recovery in accidents occurring after its passage.

DOTD'S ASSIGNMENTS OF ERROR REGARDING THE INSTRUCTIONS TO THE JURY AND THE SPECIAL VERDICT FORM
This was a bifurcated trial with the judge deciding the case as to the DOTD. Nevertheless, the trial judge instructed the jury as to the standard of care imposed upon the DOTD, and submitted interrogatories in the special verdict form to the jury relative to the negligence of DOTD. In fact, the first question on the special verdict form was the inquiry of whether DOTD was negligent in connection with the accident. The DOTD complains on this appeal that this was error because La.R.S. 13:5105 prohibits jury trials against DOTD.
La.C.C.P. art. 1812 establishes that in cases to recover damages for injury, death, or loss, the court is required to submit questions to the jury as to the fault of all parties involved in an accident, whether they are parties to the lawsuit or not. Lemire v. New Orleans Public Service, Inc., 458 So.2d 1308 (La.1984). This article does not offend the prohibition of jury trial against public agencies. Id. The jury in this case did not decide the liability of the DOTD; the trial judge did. Moreover, the trial judge fully explained to the jury throughout the trial that he would decide the case against the DOTD, and that their concern was limited to the liability and fault of the private defendants. We find no error in these assignments.
We likewise see no error in putting the question regarding the DOTD first on the interrogatory list. We fail to see how the order of the questions could have prejudiced this well informed jury.

INTEREST
The DOTD's final argument is that the trial judge erred in imposing legal interest on the judgment at the legal rate from date of judicial demand. The DOTD *208 points to Subsection C of La.R.S. 13:5112 which limits legal prejudgment interest payable by the state to 6% per annum from the date of judicial demand. This amendment placing this Subsection in the statute was enacted in 1985. For the same reasons as explained above in our discussion of La.R.S. 13:5106(B)(1), we hold that this amendment cannot be retroactively applied, and that the trial judge's assessment of interest was correct.
For the reasons assigned, we pretermit consideration of the appeal of U.S. Fire Insurance Company and Aububon Insurance Company regarding UM coverage and their cross-claims. In all other respects the judgment of the trial court is affirmed. The defendants will pay the costs of this appeal in the same proportions of their liability for costs fixed by the trial court.
AFFIRMED.