JiCOOKS, Judge.
The issue presented by this appeal is whether the State of Louisiana, Department of Transportation and Development (DOTD), breached its duty to keep the roads and bridges in safe condition. For the following reasons, we affirm the judgment of the trial court that DOTD did not breach its duty in this case.
FACTS
On December 2,1991, John J. Bijeaux, Sr., was driving home between 6:30 and 7:00 p.m on Louisiana Highway 347 after closing his pharmacy in St. Martin Parish, Louisiana. Road conditions were wet as it had been raining most of the day. Bijeaux testified he encountered mud on the surface of the highway which caused his vehicle to lose control and leave the highway. The |2vehicle catapulted some distance coming to rest in a field. There was no evidence that Bijeaux was driving in excess of the posted speed limit.
Bijeaux sustained injuries which required immediate hospitalization and eventual back surgery. Plaintiffs alleged further that Bijeaux developed complications which led to a stroke, causing paralysis on the right side of his body. After extensive rehabilitation, Bijeaux was able to return to work at his pharmacy. Unfortunately, Bijeaux suffered additional illnesses unrelated to the accident and died on June 26,1994.
Prior to his death a suit for damages was filed by Bijeaux, his wife and their three children, as well as Bijeaux’s business, Howard’s Pharmacy, Inc. of New Iberia. Named as defendant was the State of Louisiana, through the Department of Transportation and Development (hereafter DOTD). Also named as defendants were Lawrence Dugas, Sr., Lawrence Dugas, Jr., George Patout, d/b/a D & P Farms, and their insurer, Farm Bureau Casualty Insurance Company. D & P Farms was a sugarcane operation that owned and farmed the land adjacent to the area where Bijeaux’s vehicle left the road. The plaintiffs alleged it was this “property from which the mud and other foreign substances came to be placed on the road-way_” Near the accident site is a lime *1090 stone road from which D & P Farms trucks entered Highway 347. A jury heard the claims against D & P Farms. Prior to deliberation, the claims against D & P Farms were settled. The trial court heard the claims against DOTD.
On April 10, 1995, the trial court issued written reasons for judgment finding no liability on the part of DOTD in causing the accident. Plaintiffs have appealed the trial court’s judgment. For the following reasons, we [ -¡affirm.
STANDARD OF REVIEW
An appellate court may not set aside a trial court’s findings of fact in the absence of manifest error or unless it is clearly wrong. Stobart v. State, Through DOTD, 617 So.2d 880 (La.1993). The Louisiana Supreme Court has established a two-tier test for reversal of a fact finder’s determinations: (1) The appellate court must find from the record that a reasonable factual basis does not exist for the finding of the trial court, and (2) the appellate court must further determine that the record establishes that the finding is clearly wrong. Stobart, 617 So.2d at 882, citing Mart v. Hill, 505 So.2d 1120, 1127 (La.1987).
The appellate court must do more than simply review the record for evidence which supports or controverts the trial court’s findings. It must review the record in its entirety to determine whether the trial court’s findings were clearly wrong or manifestly erroneous. The task of the reviewing court is not to determine whether the conclusions of the trier of fact were right or wrong. The task is to determine whether the fact finder’s conclusions were reasonable. Disagreement with the findings of the trial court, alone, is not grounds for the reviewing court to substitute its judgment for that of the trier of fact. Stobart, 617 So.2d 880.
There are two theories of liability available to a plaintiff who claims he was injured as a result of the condition of a thing: 1) negligence, under La.Civ.Code arts. 2315 and 2316, and 2) strict liability, under La.Civ. Code art. 2317. Under both theories of liability a plaintiff must prove that the condition of the thing presented an unreasonable risk of harm, or was defective, and that this 14 condition of the thing was a eause-in-fact of the injuries.
This court in Melder v. State, Through Dept. of Highways, 512 So.2d 546, 548-549 (La.App. 3 Cir.1987) set out DOTD’s duty to the traveling public:
DOTD’s duty to travelers on state highways under La.C.C. art. 2315 is well settled. DOTD has a duty to construct and maintain the state’s highways in a condition reasonably safe for persons using ordi-. nary care and prudence. DOTD is not responsible for every accident which occurs on state highways, nor is it a guarantor of the safety of travelers or an insurer against all injury which may result from obstructions or defects in the highways. DOTD will be. held liable, under the provisions of La.C.C. art. 2315, when the evidence shows that the condition complained of presented an unreasonable risk to prudent drivers and DOTD had actual or constructive notice of the defect and failed to correct it within a reasonable time. [Citations omitted],
Shortly after the accident, State Police Trooper Conrad Vidrine investigated the accident. He attempted to retrace the path of Bijeaux’s vehicle from the cane field where it came to rest. It appeared to Trooper Vidrine that the vehicle took a straight path instead of turning or banking in conformity with the curve in the road. He noted at the point where Bijeaux’s vehicle left the road there was very little disturbance of the ground. He was not able to detect any skid marks or other such indications of braking. Trooper Vidrine did observe a small accumulation of “packed” mud on the road approximately a quarter inch to a half inch thick extending from the limestone road to Highway 347. He testified:
Q: Did Mr. Bijeaux’s vehicle, according to your investigation, go in a straight line into the cane field?
A: Yes, sir.
Q: Was there any evidence of any fishtailing, |5slipping, sideslipping of this vehicle as it left the road and went off the road?
*1091 A: No, sir.
Q: Was there any indication that the wheels of Mr. Bijeaux’s vehicle were turned either to the right or to the left?
A: No, sir. If they would have been the shoulder would have been disturbed as it ran off the road.
Q: Was there any indication that Mr. Bijeaux attempted to break his — -apply his brakes on his vehicle.
A: No, sir.
Trooper Vidrine also testified that when he interviewed Mr. Bijeaux in the hospital he stated “something about there being water on the road and that’s what caused him to lose control of this vehicle.”
Plaintiffs rely on pictures taken the day after the accident to indicate there was a large accumulation of mud on Highway 347. However, Trooper Vidrine, while confirming on the day of the accident there was similar type mud on the road, indicated there was far less of it than the photographs depicted.
Plaintiffs rely heavily on the case of Llorence v. State, Dept. of Transp. and Dev., 558 So.2d 320 (La.App. 3 Cir.), writ denied, 565 So.2d 442 (La.1990) to support their conclusion that DOTD was negligent. In Llorence this court found DOTD negligent for failing to remove an accumulation of gravel that built up “over several years.” This court, in affirming the lower court’s finding of liability, found because “the gravel had been allowed to accumulate for such a length of time that the State knew or should have known of its existence.” Llorence, 558 So.2d at 323. We agree with the trial court that Llorence is ^factually distinguishable from the present case. In Llorence the trial court found the presence of the gravel was a eause-in-fact of the accident. In the present case, accepting Trooper Vidrine’s testimony, the trial court concluded the presence of mud, however much, was not a cause of the accident. Further, in Llorence the driver was not familiar with the area, unlike Mr. Bijeaux who was driving to his house from his place of business.
We also find DOTD did not have knowledge, constructive or otherwise, of the presence of mud in this area. D & P Farms implemented a strict policy of scraping the roads to prevent potentially hazardous mud accumulations. Willie Marshall, a truck driver for D & P Farms, testified the company workers scraped the roads at least twice a day and possibly more times if necessary. Plaintiffs argue in brief that Marshall’s testimony “made it clear that D & P Farms failed to clean the mud which had been deposited on November 30 and December 1.” Marshall testified on this point as follows:
Q: Mr. Marshall, are you telling us that you didn’t scrape the road that day, December 1st?
A: I don’t remember — I don’t remember scraping that road that time there.
Q: All right, and you would — so, what you are telling us is that you were supposed to scrape it but you didn’t scrape it on the dat before Mr. Bijeaux’s accident? A: I was supposed to but I don’t remember, you know, scraping it that, you know, that day there.
* * * * * *
Q: Correct? And, from what you told us it was rainy and it was muddy on the days that you were hauling out on December 1st, 1991 out of the fields?
A: Yes.
_|v_Q: All right. And because of that, you should have scraped the road that day; is that correct?
A: That’s right. Yes, sir.
Q: And you failed to do that. Did you fail to do that on that particular day?
A: No, sir. I don’t remember, you know, cleaning that — that time there. I don’t remember if I clean it that day there. You know that day there. You know, that day there.
Q: You—
A: Because I usually clean it all the time, you know.
However, defendants also presented additional witnesses who recalled with certainty that scraping operations were performed on the night of December 1, 1991. Plaintiffs presented only the testimony of Joe Bell, who stated there was a large accumulation of mud on the night of the accident. Sugar *1092 cane operations were not performed in the area of the accident on December 2, 1991, so any mud accumulated on the road came from the harvesting operations of December 1, 1991. The trial court noted there were no problems or complaints concerning this area during the 24 hour period prior to the accident. No reasonable fact finder could infer from the record that DOTD had constructive knowledge that the area was unsafe or presented a danger to the motoring public. The trial court did not err in concluding DOTD’s conduct was not a cause-in-fact of the harm suffered by Bijeaux.
Plaintiffs also contend DOTD had a legal duty to provide warning signs in this area. We disagree. The legislature has not imposed a mandatory duty on DOTD to post warning signs at points of ingress and egress of sugarcane fields. If there were such a requirement it would necessitate hundreds of signs [galong Louisiana highways. The Manual on Uniform Traffic Control Devices (MUTCD) warns against the excessive use of signs. Dr. Joseph Blaschke, an expert in traffic design, stated that warning signs in this situation would have been ineffective. There was nothing in the record to contradict Dr. Blaschke’s testimony.
La.R.S. 48:346.1 provides DOTD with discretionary authority to install temporary warning signs of particular hazards in areas where sugarcane is harvested. We note the original bill contained the word “shall,” however it was amended before passage to replace “shall” with “may.” The legislature, thus, intended to vest DOTD with full discretion to determine when such warning signs are necessary.
DECREE
For the foregoing reasons, the judgment of the trial court is affirmed. Costs are assessed against plaintiffs-appellants.
AFFIRMED.