503 So.2d 1092 (1987)
Jerrel James LOGNION and Diane Cramer Lognion, Plaintiffs-Appellees,
v.
CALCASIEU PARISH POLICE JURY, DefendantAppellant.
No. 86-248.
Court of Appeal of Louisiana, Third Circuit.
March 4, 1987.
Rehearing Denied March 31, 1987.
Writs Denied June 5, 1987.
*1093 Terry J. Manuel, Asst. Dist. Atty., Lake Charles, for defendant-appellant.
Jones, Tete, etc., Gregory P. Massey, Lake Charles, for plaintiffs-appellees.
Before DOMENGEAUX, FORET, and KNOLL, JJ.
DOMENGEAUX, Judge.
Plaintiffs, Jerrel James Lognion and Diane Cramer Lognion, brought this action against the Calcasieu Parish Police Jury for damages for personal injuries sustained as a result of a one-car accident which occurred on Hecker Road at the Bayou Arsene Bridge in Calcasieu Parish on November 16, 1983. After a trial on the merits, the trial judge found the Police Jury liable on the basis of both strict liability and negligence. The trial judge calculated Jerrel Lognion's damages at $129,586.41 and his wife's loss of consortium claim at $1,000.00; however, he reduced both awards by one-half after apportioning the plaintiff's and Police Jury's fault at fifty percent each.
From this judgment, the Police Jury appeals. The plaintiffs answered the appeal seeking an increase in damages and a reversal of the trial court finding that Jerrel Lognion was fifty percent at fault in causing the accident.
The facts of this case were correctly stated by the trial judge in his reasons for judgment as follows:
"On the morning of November 16, 1983 Jerrel James Lognion got up for work at approximately 4:45 a.m. He left his house about half an hour later. He proceeded south on Hecker Road toward the Bayou Arsene Bridge driving a 1976 Toyota Corolla. It was a little foggy that morning and because it was still dark, Mr. Lognion had his headlights on. He was driving between 30 and 35 m.p.h. although there was no posted speed limit. Hecker Road is a two lane, 19 feet wide, gravel road owned and maintained by the Calcasieu Parish Police Jury, defendant herein. As Mr. Lognion approached the Bayou Arsene Bridge he encountered several bumps or ridges in the road, commonly called washboards. The presence of these washboards caused Mr. Lognion to lose control of his vehicle. Mr. Lognion's *1094 vehicle suddenly veered left and struck the Bayou Arsene Bridge.
The impact caused the bridge railing to go through Mr. Lognion's left wheelwell and then puncture the firewall of his vehicle. Pictures, which have been admitted in evidence, of the accident scene show that the bridge rail protrudes through the driver's side of the passenger compartment into the driver's seat. At this point Mr. Lognion was pinned in his vehicle.
It was several minutes before anyone stopped to help Mr. Lognion. It took several minutes to free Mr. Lognion from the car. He was then taken to the hospital by Richard Desjardine. This trip took approximately 20-25 minutes. At the hospital it was determined that Mr. Lognion had suffered a comminuted fibular fracture with a midshaft tibial fragment in his left leg. This required a closed reduction under general anesthesia. Mr. Lognion was then placed in a long leg cast. He remained in the hospital for two days.
Six weeks passed before Mr. Lognion was able to get up and move around on crutches. At that time the long leg cast was removed and a short cast was put in place. Thereafter, it was discovered that there had been non-union of the left tibia. This required open reduction and internal fixation with a 10 hole plate and a bone graft from the left ileum. This operation was performed under general anesthesia on May 11, 1984. After the operation Mr. Lognion was again placed in a cast for a period of five weeks. This cast was removed June 19, 1984. Mr. Lognion remained on crutches for a total period of 10 months. He was released to return to work on January 1, 1985. The plate which was placed in Mr. Lognion's leg had not been removed as of the date of trial although Dr. Phillips had recommended that it be removed within one year of placement.
In the [sic] addition to the injury described above Mr. Lognion also suffered a small laceration between the nose and the lip. His ankle and knee were also causing him some pain. At present there is also a 10% permanent impairment of the left leg."
The first issue for our consideration is whether the trial court erred in holding the defendant Police Jury liable under La.C.C. Article 2317. It is the Police Jury's contention that the trial court did err in that a three-inch washboard is only a minor imperfection on a rural gravel road and is not a defect rendering the road unreasonably dangerous. The Police Jury further contends that the plaintiffs failed to adequately prove that the condition of the road caused the accident.
La.C.C. Article 2317, in pertinent part, provides:
"We are responsible, not only for the damage occasioned by our own act, but for that which is caused by the act of persons for whom we are answerable, or of the things which we have in our custody...."
An injured party seeking damages under Article 2317 need not prove that the defendant was negligent in causing his injuries. He must only prove (1) that the thing which caused the damages was in the care and custody of the defendant, (2) that the thing had a vice or defect, that is, that it occasioned an unreasonable risk of injury to another, and (3) that his injury was caused by the defect. Shipp v. City of Alexandria, 395 So.2d 727 (La.1981); Jones v. City of Baton Rouge, 388 So.2d 737 (La.1980); Loescher v. Parr, 324 So.2d 441 (La.1976).
In Jones v. City of Baton Rouge, supra, the Supreme Court held that municipalities and other public bodies may be found liable for damages for things in their custody, and that where delictual responsibility is based not on negligence but on legal fault under Article 2317, a public body's knowledge of the existence of the danger is irrelevant.
Prior to trial, the parties stipulated that the Police Jury owned Hecker Road as well as the Bayou Arsene Bridge on Hecker Road. Under Article 2317, therefore, it must be determined whether the plaintiff met his burden of proving that the road *1095 was defective and that his injuries were caused by that defect. For the reasons stated below, we do not find the defendant Police Jury liable under La.C.C. Article 2317.
Several witnesses testified for both the plaintiffs and the defendant Police Jury concerning the condition of Hecker Road near the Bayou Arsene Bridge. The majority of the witnesses testified that there were several potholes and washboards on that portion of Hecker Road. According to Reggie Lovett, a grader operator for the Calcasieu Parish Police Jury, persons approaching the one-lane bridge would apply the brakes of the vehicles they were operating prior to crossing the bridge causing the gravel to "wash out" from beneath the tires and resulting in the appearance of potholes and washboards near the bridge. Lovett also testified that the condition of the road may have also declined due to the fact that several logging trucks traveled the road prior to the plaintiff's accident.
In addition, Dr. Olin K. Dart, Jr. testified as an expert in accident reconstruction, highway design, safety, and traffic engineering. According to Doctor Dart, the surface on Hecker Road was inadequate because of insufficient binding material used. Doctor Dart testified that, with a proper composition of materials in the road, the road would need to be graded at most only once a month and not once a week or more as the Police Jury was doing at the time of the accident. However, Herman Meaux, the Public Works Director of the Police Jury, testified that the Parish Maintenance Manual follows the Department of Transportation and Development (DOTD) specifications and that the road surface stones used on the Calcasieu public roads are in accordance with the DOTD specifications. Furthermore, pursuant to a $10,000.00 federal grant, portions of Hecker Road, including the accident site, were covered with crushed limestone only one month prior to the accident.
The record indicates that the Police Jury scheduled the grading of Hecker Road weekly, and that emergencies on any parish roads were attended to as soon as it became known to the Police Jury. Prior to trial, both parties stipulated that the telephone logs of Leola Hebert, an employee of the Police Jury, revealed no complaints in the condition of Hecker Road in 1983, nor does she remember any complaints being made. In addition, Albert Prater, Parish Road Inspector for the Police Jury since 1974, testified that he has never seen any report of an accident on Hecker Road other than the one in the present case.
Under the circumstances of this case, we find that the potholes and washboards located near the scene of the accident are not defects rendering the road unreasonably dangerous, but are ordinary hazards which are to be expected on rural, gravel, non-primary parish roadways. [See Coleman v. State of Louisiana, through the Department of Highways, 384 So.2d 484 (La.App. 2nd Cir.1980)]. The utility derived from road surfaces of shell or gravel was found to far outweigh the risk of harm of an accident caused by the temporary condition of the road in the case of Duffy v. State of Louisiana, Department of Transportation and Development, 415 So.2d 375 (La.App. 1st Cir.1982), writ denied, 420 So.2d 448 (La.1982), wherein the court stated:
"The construction and maintenance of traffic arteries are necessary functions of government. All roads and highways within the state cannot be hard surfaced. Some must be constructed of shell and gravel, and as such must be constantly maintained. The amount of traffic that travels on country shell and gravel roads does not justify the hard surfacing of these roadways, yet these roadways are important to the infrequent travelers that they do carry."
In addition, not every minor imperfection or irregularity in the roadway can be said to be defective or create an unreasonable risk of injury within the parameters of La.C.C. Articles 2315 and 2317. Burris v. Insured Lloyds, 417 So.2d 511 (La.App. 3rd Cir.1982), writ denied, 420 So.2d 982, 984 (La.1982).
We conclude, therefore, that the trial court erred in finding that the plaintiffs *1096 met the burden of proving under La.C.C. Article 2317 that the washboards on Hecker Road were defects which presented an unreasonable risk of injury to Jerrel Lognion.
The plaintiffs, in their answer to the defendant's appeal, maintained that the trial court also erred in failing to find the Police Jury strictly liable under La.C.C. Article 2317 by reason of its ownership of the Bayou Arsene Bridge. It is the plaintiff's contention that the guard rails of the bridge do not meet the present-day standards of bridge construction and, as such, renders the bridge unreasonably dangerous.
The Bayou Arsene Bridge on Hecker Road is a one-lane wooden bridge. According to Doctor Dart, the bridge railing at the time of the accident was weak and inadequate in that, unlike a W-beam rail, there was no continuity in the wooden plank and post system. Al Dunn, District Seven Administrator for the Louisiana Department of Transportation and Development for thirty-one years, testified that the bridge met the TT-21-10 revised standard plan for the Department of Highways when originally constructed. Although the record does not indicate the date that the bridge was built, the TT-21-10 standard plan was in effect for bridges built between February, 1949 and 1959. According to Mr. Dunn, there are insufficent funds to bring this bridge, as well as other TT-21-10 bridges, up to the present-day standards which require that the rail ends be a smooth transition by means of a continuation of the bridge rail with a guard rail anchored to the bridge end.
We do not find that the trial judge was in error in failing to hold the Police Jury liable under La.C.C. Article 2317 simply by reason of its ownership of the Bayou Arsene Bridge. We are not satisfied that the plaintiffs have carried their burden of proving that the bridge was defective, that is, unreasonably dangerous. The failure of the State or other public body to update its highways to the current standards does not establish the existence of a hazardous defect. Devall v. Morgan, 424 So.2d 522 (La.App. 5th Cir.1982), writ denied, 427 So.2d 1214 (La.1983); Usry v. Louisiana Department of Highways, 402 So.2d 240 (La.App. 4th Cir.1981); writ denied, 404 So.2d 1259 (La.1981); Roberts v. Winston Carriers, Inc., 304 So.2d 818 (La. App. 3rd Cir.1974), writ refused, 309 So.2d 341 (La.1975). There are presently 235 wooden bridges in Calcasieu Parish. To impose a financial burden upon the Police Jury of having to update all of these bridges within the latest guidelines would be an impossible one to fulfill. [See Roberts v. Winston Carriers, Inc., supra.]
We therefore conclude that the Calcasieu Parish Police Jury is not liable under La. C.C. Article 2317 to the plaintiffs for damages for injuries sustained by Jerrel Lognion.
Although we hold that the plaintiffs are not entitled to recover under La.C.C. Article 2317, the issue remains as to whether there is any liability on the part of the Police Jury under La.C.C. Article 2315.
In Darbonne v. State Farm Mutual Automobile Insurance Company, 408 So.2d 300 (La.App. 3rd Cir.1981), this court enunciated the extent of the obligations imposed by law upon the Police Jury to maintain the highways in a reasonably safe condition as follows:
"The Police Jury, in maintaining a public rural road system, has a duty to maintain the roads and traffic signs in a reasonably safe condition and to warn motorists of unusually perilous conditions such as improperly marked intersections..... To hold the Police Jury liable for breach of this duty, it must be shown that it had actual or constructive knowledge of the danger and that it failed to correct or to warn motorists of this danger...." [Citations omitted].
The trial judge found the Police Jury negligent in its maintenance of Hecker Road near the accident site. The trial judge also found that the Police Jury had knowledge of the condition of Hecker Road prior to this accident and that it failed to keep the road adequately graded to minimize the development of washboards and *1097 potholes. We find no manifest error in the trial judge's ruling and, thus, adopt his reasons for judgment on this issue:
"[The condition of Hecker Road] was well known to the Calcasieu Parish Police Jury and the Ward 8 personnel. This fact can be seen in the testimony of Reggie Lovett and in document No. D-1 in globo, which is comprised of Publics [sic] Works Committee Records, Calcasieu Parish. The Committee report of July 28, 1983 indicates that recommendation was made for a study of means of improving Hecker Road. There is also abundant testimony as to a broadcast by Channel 7 News concerning the condition of Hecker Road. It is readily apparent that the Calcasieu Parish Police Jury had knowledge of the condition of Hecker Road prior to the accident on November 16, 1983. The Police Jury knew that the road would develop potholes and washboards within two to three days of grading. The defendant also knew that the road would require grading at least twice a week to prevent this condition from becoming as pronounced as it was on the date of the accident.
* * * * * *
I ... find the Calcasieu Parish Police Jury negligent in its maintenance of this road, particularly in the area just north of the Bayou Arsene Bridge. The evidence indicates that the road needed grading twice per week in order to maintain a relatively smooth surface. It also indicates in spite of this knowledge that the road was scheduled for grading only once per week. The evidence also indicates that a minimum of 8 hours grading time was required for the road to be properly graded. On November 9, 1983, the last time the road was graded prior to the accident, only 4.75 hours was spent grading Hecker Road. This indicates that the road was not adequately graded on Nov. 9, 1983. As a result one week later the road was again in substandard condition. On the approach to the bridge there was an area between 75-100 feet that contained a washboard surface. It was entirely foreseeable that with the road in the condition it was in that this type surface would be a recurring problem unless either corrective measures were taken or unless it was graded more often. It was also foreseeable that this type of surface could cause a vehicle to go out of control and thereby result in an accident. This is precisely what occurred in the instant case.
The Calcasieu Parish Police Jury has a duty to provide reasonably safe roads to the public. In this case it has failed to do so. This duty extends to all who use the roads. Jerrel James Lognion falls within this category, thus the Parish owed Mr. Lognion a duty to provide a reasonably safe road. Defendant breached this duty by providing inadequate maintenance on Hecker Road. As a result of this breach Mr. Lognion was involved in an accident which caused him personal injury and monetary loss."
We next address the issue of whether the trial court erred in apportioning the fault of Jerrel Lognion and the Police Jury at fifty percent each. The plaintiff contends that he was not at fault in causing the accident or, if he was, his fault should be assessed at no more than ten percent. The defendant, however, contends that the plaintiff was the sole cause of the accident and should be barred from recovering damages.
A trial court's finding as to a percentage of fault under La.C.C. Article 2323 is factual and must be upheld on appeal in the absence of clear or manifest error, or an abuse of discretion. Tauzin v. Broussard, 451 So.2d 643 (La.App. 3rd Cir.1984); Batiste v. Joyce's Supermarket, 488 So.2d 1318 (La.App. 3rd Cir.1986).
After a careful review of the record, we fail to find the trial judge's finding of comparative negligence to be manifestly erroneous. In doing so, we adopt that portion of the trial judge's well-written reasons for judgment:
"Mr. Lognion testified that he was familiar with the conditions of Hecker Road. He had travelled it back and forth to work for a period of at least six months. He was aware that when washboards *1098 were present, the possibility existed that a car might tend to fishtail and that a driver could lose control. He was also aware that washboards would reappear in the road soon after grading.
Mr. Lognion testified that he did not recall seeing the one lane bridge sign on the right side of Hecker Road on the approach to the bridge. There is abundant testimony that the sign was in place and visible at the time of the accident. Furthermore, Mr. Lognion had travelled across this bridge on a regular basis for a period of at least six months. He was aware that the Bayou Arsene Bridge was a narrow bridge and should be approached with caution. Because Mr. Lognion was aware of the presence of the narrow bridge and was aware of the general condition of Hecker Road, the propensity of the road to washboard within a few days of grading, I find his conduct in failing to reduce his speed upon approach to the bridge tantamount to victim fault and/or contributory negligence. I apportion his fault in this accident at 50% and the fault of the Calcasieu Parish Police Jury at 50%."[1]
The next two issues concern the damages awarded to the plaintiff in this case. The defendant Police Jury claims that the $80,000.00 award to plaintiff for past and future pain and suffering was excessive. Secondly, the plaintiffs argue that the trial judge erred in awarding Diane Lognion only $1,000.00 for her loss of consortium claim.
The standard of appellate review of awards for damages was enunciated by the Supreme Court in Coco v. Winston Industries, Inc., 341 So.2d 332 (La.1976), as follows:
"We do reemphasize, however, that before a Court of Appeal can disturb an award made by a trial court that the record must clearly reveal that the trier of fact abused its discretion in making its award. Anderson v. Welding Testing Laboratory, Inc. [304 So.2d 351 (La. 1974)], supra; Bitoun v. Landry [302 So.2d 278 (La.1974)], supra; Fox v. State Farm Mutual Automobile Ins. Co. [288 So.2d 42 (La.1973)], supra; Walker v. Champion [288 So.2d 44 (La. 1973)], supra. Only after making the finding that the record supports that the lower court abused its much discretion can the appellate court disturb the award, and then only to the extent of lowering it (or raising it) to the highest (or lowest) point which is reasonably within the discretion afforded that court. Bitoun v. Landry, supra; Spillers v. Montgomery Ward & Company, Inc., [294 So.2d 803 (La.1974)], supra. It is never appropriate for a Court of Appeal, having found that the trial court has abused its discretion, simply to decide that it considers an appropriate award on the basis of the evidence."
The record indicates that Jerrel Lognion's diagnosis of the injuries he received in the accident was a completely displaced tibia and fibula fracture of the left leg. On the date of the accident, Dr. Thomas B. Ford performed a closed reduction of his tibia and fibula fracture with the placement of a long leg cast under general anesthesia. On March 6, 1984, approximately five months after the accident, plaintiff went to Dr. Edward Phillips inasmuch as his leg had not healed properly. On May 11, 1984, plaintiff underwent an open reduction of his left leg wherein Doctor Phillips placed a 10-hole Dynamic Compression Plate in plaintiff's leg to hold the bone in place until it healed. A bone graft surgical procedure was also performed by taking bone material from other areas of his body and packing it around the fracture to promote healing. Plaintiff was then fitted with a cast which he wore until June 19, 1984. After the operation, he was given a ten day prescription for pain killers. On July 17, 1984, he was allowed to place full weight on his left leg and when Doctor Phillips last saw plaintiff on December 14, 1984, he was *1099 pleased with Mr. Lognion's progress and advised him that he could return to work as an electrician on January 1, 1985. Doctor Phillips further indicated that plaintiff has a ten percent disability of the leg as a result of the injury. It was Doctor Phillips' recommendation that the plate be removed from plaintiff's leg a year and a half after the surgery was performed.
The plaintiff testified that at the time of the trial, his leg still swells and he experiences soreness in both his left knee and ankle. He further testified that he has not been able to have the plate removed because he cannot afford the surgery at the present time.
The trial judge took the above into consideration and found that "... Mr. Lognion underwent a great deal of pain and suffering due to the injuries he received in this accident." It was his opinion that an award of $80,000.00 for plaintiff's pain and suffering was warranted. After a review of the record, we cannot say that the trial judge abused his much discretion by awarding such damages for plaintiff's pain and suffering.
The issue of damages was also raised by the plaintiff inasmuch as his wife was only awarded $1,000.00 for her loss of consortium claim.
The plaintiffs cite several cases wherein the lower court awarded damages for loss of consortium ranging from $5,000.00 to $50,000.00. The Supreme Court in Reck v. Stevens, 373 So.2d 498 (La.1979), however, stated the following with respect to an appellate court's reliance on prior court decisions on the issue of damages:
"Before a trial court award may be questioned as inadequate or excessive, the reviewing court must look first, not to prior awards, but to the individual circumstances of the present case. Only after analysis of the facts and circumstances peculiar to this case and this individual may a reviewing court determine that the award is excessive."
Both Mr. and Mrs. Lognion testified at trial. Both claimed that, as a result of the accident, their sexual relationship was seriously affected. Mr. Lognion claims that they could not engage in sexual relations for four or five months after the accident and that their relationship did not improve to the point to which it had been before the accident until nearly two years after the accident. Mrs. Lognion corroborated his testimony and also stated that, shortly after the accident, her husband became irritable and short-tempered.
We note that on the surface Mrs. Lognion's award for loss of consortium may be considered on the low side; however, the only evidence with which we are supplied on this issue is the brief, self-serving testimony of the plaintiffs. We note that there is no corroborating medical testimony. After a consideration of the evidence it may well be that the trial judge was simply not impressed with the plaintiffs' testimony and, accordingly, awarded only $1,000.00 to Mrs. Lognion. Taking into account the above, we are unwilling to say that the trial judge abused his great discretion in his award to the plaintiffs on the loss of consortium claim.
The next issue for our consideration is whether the trial court erred in casting all costs against the defendant. The Police Jury maintains that since it was held to be only fifty percent at fault in causing the accident, it should only be responsible for one-half of the court costs at trial. The Police Jury alternatively argues that La.C.C.P. Article 1920, as applied in this case, is in violation of the United States and Louisiana Constitutions.[2]
La.C.C.P. Article 1920 provides:
"Unless the judgment provides otherwise, costs shall be paid by the party cast, and may be taxed by a rule to show cause.

*1100 Except as otherwise provided by law, the court may render judgment for costs, or any part thereof, against any party, as it may consider equitable." (Emphasis supplied).
The lower court is vested with great, but not unbounded, discretion in determining who was liable and also in apportioning costs as it deems equitable. American Deposit Insurance Company v. Walker, 450 So.2d 33 (La.App. 3rd Cir. 1984). Although plaintiff is equally at fault with the defendant in the instant case, we do not find that the trial judge abused his discretion by imposing costs solely upon the defendant. [See Clark v. Laird, 458 So.2d 639 (La.App. 3rd Cir. 1984); writ denied, 462 So.2d 210 (La. 1985); Varnado v. Continental Insurance Company, 446 So.2d 1343 (La.App. 1st Cir. 1984).]
For the above and foregoing reasons the judgment of the district court is reversed insofar as it holds the defendant Police Jury strictly liable under La.C.C. Article 2317. In all other respects, it is affirmed. Costs of this appeal are to be borne equally by the plaintiffs and defendant.
REVERSED IN PART AND AFFIRMED IN PART.
NOTES
[1] Although we cannot say that the trial judge abused his discretion in apportioning the fault equally between the two parties, considering all of the facets of this case, and in particular the plaintiff's familiarity with the Bayou Arsene Bridge on Hecker Road and its environs, we, as trier of fact, well may have found the plaintiff's fault to be greater than 50%.
[2] The Police Jury raises this issue for the first time in a supplemental reply brief addressed to this Court. It, therefore, has failed to satisfy the established requirement that a constitutional challenge must be affirmatively pleaded at the trial level before the issue can be raised on appeal. Johnson v. Welsh, 334 So.2d 395 (La. 1976); Gauthreaux v. Gauthreaux, 377 So.2d 567 (La.App. 3rd Cir.1979). Hence, we do not consider the constitutional issue.