740 So.2d 666 (1999)
Terry Carson DAVIS
v.
SPECIALTY DIVING, INC., XYZ Insurance Company, Gene Lane, ABC Insurance Company, and Deborah Wallace.
Mary Jane Duncan, et al.
v.
Specialty Diving, Inc., XYZ Insurance Company, Gene Lane, ABC Insurance Company, and Deborah Wallace.
Nos. 98 CA 0458, 98 CA 0459.
Court of Appeal of Louisiana, First Circuit.
April 1, 1999.
Rehearing Denied May 25, 1999.
Writ Denied October 8, 1999.
*667 Dan D. Schaneville, Jr., Baton Rouge, Counsel for plaintiff/2nd appellant, Mary Jane Duncan.
Corbett Ourso, Hammond, Counsel for plaintiff, Terry Carson Davis.
Richard Vale, Metairie, Counsel for defendant/1st appellant, Specialty Diving, Inc.
R. Joshua Koch, Metairie, Counsel for defendant, Deborah Wallace.
Before: CARTER, C.J., SHORTESS and WHIPPLE, JJ.
WHIPPLE, J.
This is an appeal from a judgment, granting in part and denying in part the motion for summary judgment filed by defendant, Specialty Diving, Inc. ("Specialty Diving"). Both plaintiff, Mary Jane Duncan, and Specialty Diving appeal. For the following reasons, we reverse in part.

FACTS AND PROCEDURAL HISTORY
On September 6, 1995, Timothy Davis, an employee of Specialty Diving, drowned while on Specialty Diving's premises. Davis and a co-worker, Gene Lane, who were both dive tenders, were inside a dive tank filled with water, allegedly making repairs to the tank. While inside the tank, Lane threw a metal plate at Davis, who was standing on the ladder of the tank. The metal plate struck Davis in the head, and he fell back into the tank and did not resurface.
After the passage of some period of time, Lane, who was still in the tank, went underwater to check on Davis' condition. According to Lane, Davis appeared to be convulsing, and Lane then attempted to remove Davis from the tank. After some failed attempts, Lane removed Davis from the tank and attempted to resuscitate Davis until paramedics arrived. Despite efforts to resuscitate Davis, Davis died. An autopsy report listed the cause of death as "[h]ead injury with secondary drowning."
Davis' father, Terry Carson Davis, filed suit in tort against Specialty Diving; Lane; and Deborah Wallace, the owner of the premises. Davis' mother, Mary Jane Duncan, also filed a petition for damages against Specialty Diving, Lane and Wallace.[1] *668 Plaintiffs in these actions both asserted wrongful death and survival claims against defendants under negligence and strict liability theories. Thereafter, these two cases were consolidated.
Specialty Diving filed a motion for summary judgment against plaintiffs, contending that pursuant to LSA-R.S. 23:1032, workers' compensation provided the exclusive remedy herein, and plaintiffs were consequently barred from asserting their tort claims against it. Thereafter, plaintiff Mary Jane Duncan filed an amended petition asserting a claim against defendants for intentional tort based on Lane's actions on the day of Davis' death. Specialty Diving then filed a supplemental memorandum in support of summary judgment, averring that plaintiff's intentional tort claim against it should also be dismissed, because neither Davis nor Lane was acting within the course and scope of his employment at the time of Davis' death, and any intentional act by Lane was not in furtherance of Specialty Diving's business.[2]
Following a hearing, the trial court granted the motion for summary judgment in part and denied it in part.[3] The motion was granted as to plaintiffs' negligence claims against Specialty Diving, but it was denied as to the intentional tort claim asserted by plaintiff Duncan.[4] The trial court specifically designated this partial judgment as a final judgment for purposes of appeal, pursuant to LSA-C.C.P. art. 1915(B)(1).
Specialty Diving appeals, contending that the trial court erred in denying its motion for summary judgment as to plaintiffs intentional tort claim. Plaintiff Mary Jane Duncan also appeals, contending that the trial court erred in dismissing her negligence claims against Specialty Diving before determining whether the actions of the employees were within the course and scope of employment.[5]

*669 SUMMARY JUDGMENT
A motion for summary judgment is a procedural device used to avoid a full-scale trial where there is no genuine factual dispute. Sanders v. Ashland Oil, Inc., 96-1751, p. 5 (La.App. 1st Cir.6/20/97); 696 So.2d 1031, 1034, writ denied, 97-1911 (La.10/31/97); 703 So.2d 29. It should only be granted if the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, show that there is no genuine issue as to material fact and that the mover is entitled to judgment as a matter of law. LSA-C.C.P. art. 966.
Summary judgments are now favored, and the documents submitted by both parties are to be equally scrutinized. Berzas v. OXY USA, Inc., 29,835, pp. 4-5 (La.App. 2nd Cir.9/24/97); 699 So.2d 1149, 1152; Hayes v. Autin, 96-287, p. 6 (La. App. 3rd Cir.12/26/96); 685 So.2d 691, 694, writ denied, 97-0281 (La.3/14/97); 690 So.2d 41. The initial burden remains with the mover to show that no genuine issue of material fact exists. If the moving party points out that there is an absence of factual support for one or more elements essential to the adverse party's claim, action or defense, then the nonmoving party must produce factual support sufficient to satisfy his evidentiary burden at trial. LSA-C.C.P. art. 966(C)(2). If the non-moving party fails to do so, there is no genuine issue of material fact, and summary judgment should be granted. LSA-C.C.P. arts. 966 and 967; Berzas, 29,835 at p. 8; 699 So.2d at 1154.
Appellate courts review summary judgments de novo under the same criteria that govern the trial court's determination of whether a summary judgment is appropriate.[6]Sanders, 96-1751 at p. 7; 696 So.2d at 1035. Because it is the applicable substantive law that determines materiality, whether or not a particular fact in dispute is material can be seen only in light of the substantive law applicable to the case. Ledet v. Quality Shipyards, Inc., 615 So.2d 990, 992 (La.App. 1st Cir. 1993).

DISCUSSION
At the outset, we note that in its appeal, Specialty Diving has assigned error only to the trial court's denial in part of its motion for summary judgment as to plaintiffs intentional tort claim. However, the denial of a motion for summary judgment is an interlocutory judgment and is not appealable. LSA-C.C.P. arts. 968, 1841; Trahan v. Rally's Hamburgers, Inc., 96-1837, p. 9 (La.App. 1st Cir.6/20/97); 696 So.2d 637, 642. The trial court's attempt to certify a judgment denying a motion for summary judgment as a final judgment pursuant to LSA-C.C.P. art. 1915(B)(1) does not render the judgment appealable.
Thus, the portion of the trial court's judgment herein which denied in part Specialty Diving's motion for summary judgment as to plaintiffs intentional tort claim is an interlocutory ruling, and the issue raised in Specialty Diving's sole assignment of error, challenging that portion of the judgment, is not properly before us. See Trahan, 96-1837 at p. 9; 696 So.2d at 642. As such, we limit our review of the trial court's judgment to the issue raised by plaintiffs assignment of error, i.e., whether the trial court erred in granting in part Specialty Diving's motion for summary judgment, dismissing plaintiffs negligence claims against Specialty Diving.
The Louisiana Workers' Compensation Act ("the Act") provides for compensation if an employee sustains personal injury as the result of an accident arising out of and in the course of employment. LSA-R.S. 23:1031. Compensation benefits are *670 the employee's exclusive remedy against his employer for such an injury. LSA-R.S. 23:1032; Mundy v. Department of Health and Human Resources, 593 So.2d 346, 349 (La.1992).
An accident occurs "in the course of employment" when the employee sustains an injury while actively engaged in the performance of his duties during working hours, either on the employer's premises or at other places where employment activities take the employee. Mundy, 593 So.2d at 349. The determination of whether the accident arises "out of employment" focuses on the character or source of the risk which gives rise to the injury and on the relationship of the risk to the nature of the injury. Mundy, 593 So.2d at 349. The "course of employment" and "arising out of employment" requirements are not separate and unrelated concepts. Rather, there is a mutual interdependence of the two concepts in determining the relationship of the injury to the employment. Mundy, 593 So.2d at 349.
If an accident does not arise out of and in the course of employment, it is not covered by the provisions of the Act, and the employee is, thus, entitled to bring an action under general tort law. See Fonseca v. Marlin Marine Corporation, 410 So.2d 674, 677 (La.1981).
In arguing in support of summary judgment dismissing plaintiffs negligence claims, Specialty Diving relies upon the exclusive remedy doctrine of LSA-R.S. 23:1032. Implicit in this assertion, and in the trial court's ruling granting the summary judgment as to plaintiff's negligence claims, is a finding that Davis' injury is covered by the Act, i.e., that his death "arose out of and "in the course of his employment with Specialty Diving.[7]
Thus, to affirm the grant of summary judgment herein, this court would have to agree with Specialty Diving's assertion that there are no material issues of fact that at the time of Davis' death, Davis was acting within the course of his employment with Specialty Diving. Based on our review of the evidence, we conclude that if anything is clear about this case it is that there are many factual disputes regarding the circumstances surrounding Davis' death, including whether the actions of Davis and Lane at that time were employment-related.
Initially, we note that Lane, as the only surviving witness to the incident, gave two conflicting statements regarding the events surrounding Davis' death. In his first statement, Lane claimed that he was not present when Davis was injured, but found Davis floating in the dive tank with a cut on his head. In his second statement, Lane admitted that he was present in the dive tank at the time of the incident. He claimed that both he and Davis had been ingesting freon in the tank as well as earlier at lunch. However, he stated that he decided to get back to work and went underwater to retrieve a metal plate which needed to be removed from the tank. According to Lane, he threw the metal plate at Davis, thinking that Davis would catch it. The plate struck Davis in the head, resulting in a one and one-half inch laceration. Davis then fell back into the water and ultimately drowned.
However, neither statement given by Lane explains the presence of five subcutaneous hemorrhages found on autopsy on the crown of Davis' head. Dr. Juanito Lim, the pathologist who performed one of two autopsies on Davis' body, opined that these hemorrhages resulted from five separate blunt traumas to the head and were not consistent with Davis' head striking the side of the tank as attempts were made to remove him from the tank.
*671 Also, while Lane claimed that both he and Tim had ingested freon at lunch and while in the tank, toxicological analysis of Davis' blood revealed that the presence of fluorocarbons could not be confirmed. These blood samples were taken on the day of Davis' death by Dr. Vincent Cefalu, the Tangipahoa Parish coroner who also performed an autopsy on Davis' body. Dr. Cefalu testified that freon present in the bloodstream of a deceased individual should not begin to evaporate until the embalming process is started, and he further opined that freon levels would not be significantly lower three to five days after death.
While we remain cognizant of the fact that summary judgment is now a favored procedure to dispose of cases where no factual dispute exists, this case is simply not appropriate for resolution on summary judgment. Considering our foregoing discussion and the record as a whole, we conclude that there are genuine issues of material fact in this case as to what transpired between the two men immediately prior to Davis' death and as to whether Davis was engaged in activities in the course of his employment at the time of his death, determining factors as to whether the exclusive remedy provision of the Act precludes an action in negligence. For these reasons, we conclude that the trial court erred in granting summary judgment, dismissing plaintiff's negligence claims against Specialty Diving.
On the strength of this record, we are unable to say that Specialty Diving has established its entitlement to judgment as a matter of law. We deem it noteworthy that while Lane gave two allegedly conflicting statements to the police, only one of the statements appears in the record. Although statements allegedly made by Lane in his initial interview with the police were discussed in the officer's statement, only the later statement was introduced. Most importantly, the record does not contain any sworn testimony by Lane, the most crucial witness in this case, as none of the parties introduced the deposition testimony of this witness.[8]
For these reasons, and considering the record before us, we conclude that this matter may not be resolved on summary judgment. Moreover, given the numerous inter-related factual and legal issues which must be determined by the trial court, we question whether this matter can be resolved through a summary judgment proceeding. Instead, we doubt whether the many issues presented herein can be resolved in the absence of a full trial on the merits.

CONCLUSION
For the above and foregoing reasons, the portion of the trial court's November 3, 1997 judgment which granted in part Specialty Diving's motion for summary judgment and dismissed plaintiff Mary Jane Duncan's negligence claims against it with prejudice is reversed. The matter is remanded for further proceedings consistent with the views expressed herein.
Costs of this appeal are assessed against defendant, Specialty Diving, Inc.
REVERSED IN PART AND REMANDED.
NOTES
[1] Duncan filed suit individually and as tutrix of her minor child, Tyler Davis. Also named as plaintiff was Tanya Davis, individually and as undertutrix of the minor child. However, by first amending petition, plaintiffs acknowledged that neither Tyler Davis nor Tanya Davis were entitled to assert causes of action against the defendants pursuant to LSA-C.C. arts. 2315.1 and 2315.2
[2] In its supplemental memorandum in support of summary judgment, Specialty Diving refers to five exhibits purportedly filed in connection with the supplemental memorandum. However, according to the trial court, these exhibits were never filed into the trial court record by Specialty Diving.
[3] The judgment also granted a motion for summary judgment filed by defendant Wallace. However, that portion of the judgment is not a subject of this appeal.
[4] Judgment was rendered herein without written reasons for judgment. Louisiana Code of Civil Procedure article 1917 provides, in pertinent part, "the court when requested to do so by a party shall give in writing its findings of fact and reasons for judgment, provided the request is made not later than ten days after the signing of the judgment."

Judgment was signed on November 3, 1997. On November 6, 1997, Specialty Diving requested written findings of fact and reasons for judgment. The trial court responded to that motion by stating that the previously assigned oral reasons, given at the October 8, 1997 hearing, would constitute the court's written reasons. However, the transcript of the hearing reflects that no oral findings of fact or reasons for judgment were given.
When a trial judge fails to comply with a timely request for written findings of fact and reasons for judgment pursuant to LSA-C.C.P. art.1917, the proper remedy for the aggrieved party is to apply for supervisory writs or move for a remand for the purpose of requiring or affording the trial judge an opportunity to comply with the request. Brocato v. Brocato, 369 So.2d 1083, 1085 (La.App. 1st Cir.), writ denied, 371 So.2d 1341 (La.1979). In the instant case neither remedy was employed. Therefore, we shall review the matter as in any other case where the record contains no reasons for judgment.
[5] Plaintiff Terry Carson Davis did not file an opposition to Specialty Diving's motion for summary judgment and did not participate at the hearing on the motion. Moreover, he has not appealed the judgment dismissing his claims against Specialty Diving.

Counsel for Duncan averred at the hearing on the motion for summary judgment that the parental rights of Terry Carson Davis had been terminated years before Timothy Davis' death.
[6] In our review of the record herein, this court noted that the exhibits filed in opposition to the motion for summary judgment were apparently inadvertently not included in the appellate record, and while the trial court located an index of these exhibits, it could not locate the actual exhibits. The parties were notified and given a period of time to supplement the record on appeal with these exhibits, and the parties timely complied.
[7] We note that while Specialty Diving argues that it is immune from tort liability as to plaintiff's negligence claims by virtue of LSA-R.S. 23:1032, it also asserts in brief that neither Davis nor Lane were acting within the course and scope of their employment at the time of Davis' death.
[8] Indeed, it is unclear from the record whether any party has ever taken Lane's deposition.