872 So.2d 1117 (2004)
Pamela Ann RACCA
v.
ST. MARY SUGAR COOPERATIVE, INC., Sterling Sugars, Inc. Raphael Rodriguez, Jr., Shirley Rodriguez, Ronald James Rodriguez, State of Louisiana, Through the Department of Transportation and Development, State of Louisiana Through the Department of Public Safety and Corrections, Parish of St. Mary, Louisiana, Town of Baldwin, Louisiana, Blair J. Hebert, and State Farm Mutual Automobile Insurance Company
No. 2002 CA 1766.
Court of Appeal of Louisiana, First Circuit.
February 23, 2004.
Writ Denied May 7, 2004.
*1119 Lawrence N. Curtis, Curtis & Lambert, Lafayette, for Plaintiff-Appellant Pamela Ann Racca.
L. Albert Forrest, Forrest & Lopresto, New Iberia, for Defendants-Appellees Shirley and Ronald James Rodriguez, d/b/a Rodriguez Brothers Farms.
Michael W. Campbell, Caffery, Oubre, Campbell & Garrison, L.L.P., Lafayette, for Defendant-Appellee Raphael Rodriguez, Jr.
Robert T. Myers, Young Richaud & Myers, New Orleans, for Defendant-Appellee St. Mary Sugar Cooperative, Inc.
Richard P. Ieyoub, Marjorie G. O'Connor, Attorney General's Office, Baton Rouge, for Defendant-Appellee State of Louisiana, through the Department of Public Safety and Corrections.
James R. McClelland, Aycock, Horne & Coleman, Franklin, for Defendant-Appellee Parish of St. Mary.
T. Allen Usry, John F. Weeks, II, Freeman R. Matthews, Usry, Weeks, & Matthews, New Orleans, for Defendant-Appellee David A. Naquin, Sheriff of St. Mary Parish.
Before: PARRO, McDONALD, and CLAIBORNE,[1] JJ.
PARRO, J.
Pamela A. Racca (Racca) appeals from multiple judgments of the trial court, which ultimately dismissed all her personal injury claims against various defendants on summary judgments. For the following reasons, we affirm.

Facts and Procedural History
Racca was a passenger in a small pickup truck that was involved in a single-vehicle accident on Cypremort Road in the Town of Baldwin, Parish of St. Mary, Louisiana. The accident occurred about 10 p.m. on a wet and rainy night on November 24, 1996, during sugarcane harvesting time. The truck in which she was riding encountered mud on the road, went out of control, ran across the opposing lane, and crashed into a bridge crossing Kelly Canal. Racca filed suit against Blair J. Hebert (Hebert), the owner and driver of the truck; State Farm Mutual Automobile Insurance Company (State Farm), Hebert's liability insurer; Raphael Rodriquez, Jr. (Rodriguez), a sugarcane farmer; Shirley Rodriguez and Ronald James Rodriguez (Rodriquez Brothers), sugarcane farmers who sometimes did business as Rodriguez Brothers Farm; Sterling Sugars, Inc. *1120 (Sterling), a sugar mill; St. Mary Sugar Cooperative, Inc. (St. Mary Coop), a sugarcane cooperative to which the farmers allegedly belonged; Louisiana Department of Transportation and Development (DOTD); Louisiana Department of Public Safety and Corrections (DPSC); St. Mary Parish; David Naquin, the sheriff of St. Mary Parish (the sheriff); and the Town of Baldwin.
Racca alleged that mud and debris had been tracked onto the highway by area farmers hauling their harvested sugarcane to local processors, and that the presence of these substances on the road was a causative factor in the accident. She accused the farmers, the cooperative, and the sugar mill of failing to properly train their members and employees about sugarcane farming operations, so as to either eliminate or significantly reduce the possibility of mud and other debris being tracked onto the road surface. She further asserted that the governmental entities failed (1) to warn the public of the dangerous and otherwise defective condition of the traveled portion of the road in the vicinity of the bridge, (2) to inspect the road in the vicinity of the bridge with sufficient regularity to discover the dangerous and otherwise defective condition of the roadway surface, and (3) to train those charged with the responsibility to inspect and maintain the traveled portion of the roadway surface in question. Racca also alleged that Hebert failed to operate his motor vehicle in a careful and prudent manner and failed to apply or timely apply his brakes to avoid hitting the bridge. She claimed the accident caused injuries to her head, neck, back, and extremities, and sought damages from all the defendants.
Subsequently, Racca voluntarily dismissed the Town of Baldwin, Hebert, and State Farm. All of the remaining defendants were eventually dismissed from the suit pursuant to the trial court's granting of various motions for summary judgment. Following the trial court's granting of the motions for summary judgment filed by DPSC, St. Mary Parish, and the sheriff, which dismissed the last of Racca's claims, Racca appealed the trial court's rulings with respect to all the summary judgments granted in favor of the defendants.[2]

Summary Judgment
Summary judgments are reviewed on appeal de novo, with the appellate court using the same criteria that govern the trial court's determination of whether summary judgment is appropriate. Smith v. Our Lady of the Lake Hosp., Inc., 93-2512 (La.7/5/94), 639 So.2d 730, 750. A motion for summary judgment is a procedural device used to avoid a full-scale trial when there is no genuine issue of material fact. Jarrell v. Carter, 632 So.2d 321, 323 (La. App. 1st Cir.1993), writ denied, 94-0700 (La.4/29/94), 637 So.2d 467. The summary judgment procedure is favored and is designed to secure the just, speedy, and inexpensive determination of every action. LSA-C.C.P. art. 966(A)(2); Rambo v. Walker, 96-2538 (La.App. 1st Cir.11/7/97), 704 So.2d 30, 32. The motion should be granted only if the pleadings, depositions, answers to interrogatories, and admissions on file, together with any affidavits, show that there is no genuine issue as to material fact and that mover is entitled to judgment as a matter of law. LSA-C.C.P. art. 966(B).
The initial burden of proof is on the moving party. On issues for which the moving party will not bear the burden of proof at trial, the moving party's burden of proof on the motion is satisfied by pointing out to the court that there is an absence of factual support for one or more elements essential to the adverse party's claim, action, *1121 or defense. Thereafter, the nonmoving party must produce factual support sufficient to establish that it will be able to satisfy its evidentiary burden of proof at trial; failure to do so shows that there is no genuine issue of material fact. LSA-C.C.P. art. 966(C)(2); Clark v. Favalora, 98-1802 (La.App. 1st Cir.9/24/99), 745 So.2d 666, 673. Because it is the applicable substantive law that determines materiality, whether a particular fact in dispute is material can be seen only in light of the substantive law applicable to the case. Davis v. Specialty Diving, Inc., 98-0459 (La.App. 1st Cir.4/1/99), 740 So.2d 666, 669, writ denied, 99-1852 (La.10/8/99), 750 So.2d 972. The trial court cannot make credibility determinations on a motion for summary judgment. In deciding a motion for summary judgment, the court must assume that all of the affiants are credible. Independent Fire Ins. Co. v. Sunbeam Corp., 99-2181 (La.2/29/00), 755 So.2d 226, 236.

Liability of the Farmers
In her petition, Racca alleged that Rodriguez and Rodriguez Brothers had harvested sugarcane near the accident site and had used Cypremort Road to haul their sugarcane to two local processors. She charged that they did not take precautions to prevent or reduce the accumulation of mud and sugarcane debris on the highway.
The farmers claimed that their harvesting operations were too remote in time and/or location for the mud and debris on the road at the time of the accident to have been a product of their actions. In support of their motions, they produced affidavits and other documents showing that when the accident occurred, it had been fourteen days since Rodriguez had hauled sugarcane on Cypremort Road in the area of the accident, and seven days since Rodriguez Brothers had hauled sugarcane on that route. Furthermore, Rodriguez averred by affidavit that the accident occurred in the vicinity of several sugar mills and adjacent to rural land used by various other farmers for growing sugarcane. In opposing their motions, Racca argued that this evidence did not establish that the mud could not have remained on the road for seven to fourteen days, but offered no opposing evidence.
Racca claims the trial court improperly took judicial notice of the fact that mud does not stay on Louisiana highways for more than a day or two at a time. She also contends that because there was insufficient evidence to support the granting of the farmers' motions, the judge had visited the accident site. She argues that the judge's visit to the scene resulted in a supplementation of the record and/or allowed the judge to assess the credibility of the evidence offered in favor of these motions.
Concerning the judge's visit to the accident site, we note that this visit occurred in the summer of 1998 after a hearing on motions for summary judgment filed by several of the defendants. At that hearing, the judge stated, "I just want to see exactly where you are saying this took place," and asked the attorneys to accompany him and point out the accident site. This visit in the summer of 1998 could not have added anything to the judge's understanding of whether or not the farmers named in the lawsuit had deposited mud and debris on the road at that site in November 1996. More significantly, because this court conducts a de novo review of the evidence when evaluating the propriety of a summary judgment, any inferences that might have been drawn by the trial judge as a result of a site visit or from taking judicial notice of certain facts do not impact this court's conclusions on appeal.
*1122 Louisiana courts have adopted a duty-risk analysis in determining whether to impose liability under the general negligence principles of Louisiana Civil Code article 2315. For liability to attach under a duty-risk analysis, a plaintiff must prove five separate elements: (1) the defendant had a duty to conform his or her conduct to a specific standard of care (the duty element); (2) the defendant failed to conform his or her conduct to the appropriate standard of care (the breach of duty element); (3) the defendant's substandard conduct was a cause-in-fact of the plaintiff's injuries (the cause-in-fact element); (4) the defendant's substandard conduct was a legal cause of the plaintiff's injuries (the scope of protection element); and (5) actual damages (the damage element). Pinsonneault v. Merchants & Farmers Bank & Trust Co., 01-2217 (La.4/3/02), 816 So.2d 270, 275-76.
Racca had the burden of proof at trial on the liability issue. Therefore, the farmers, as movers, were not required to negate all essential elements of Racca's claims, but merely to point out an absence of support for one or more of those elements. The farmers' motions for summary judgment were supported by evidence establishing the remoteness in time of their work in this area and the presence of other farming operations near the site. Their evidence showed Racca would not be able to prove that either of their farming operations caused or contributed to the mud on Cypremort Road on the day of the accident, thus demonstrating an absence of factual support for the cause-in-fact element.
The burden of proof then shifted to Racca to produce factual support sufficient to establish that she would be able to satisfy her evidentiary burden of proof at trial on this element. Racca produced no evidence to indicate that, contrary to their assertions, Rodriguez and/or Rodriguez Brothers actually were hauling sugarcane on Cypremort Road during the week immediately preceding the accident or that any of their harvesting activities actually tracked mud onto that road at that site at that time. Additionally, Racca did not offer factual support to establish that mud from their operations could have remained on the road for a period of seven/fourteen days. Instead, she faulted the farmers for not offering evidence to show the weather conditions in the seven/fourteen days preceding the accident, the construction and characteristics of the road, or other activity that had taken place on this road seven/fourteen days prior to the accident. However, the burden was on Racca to produce such evidence to establish that she would be able to satisfy her evidentiary burden of proof at trial that the farming operations of either of these farmers caused or contributed to the condition of the road on the date of the accident. In light of her failure to do so, we conclude that summary judgment in favor of the farmers was appropriate.

Liability of the Sugarcane Cooperative and the Sugar Mill
Racca's claims against St. Mary Coop and Sterling are based on their failure to properly train, regulate, or manage their members and employees about sugarcane farming operations, so as to either eliminate or significantly reduce the possibility of mud and other debris being tracked onto the road surface. Based on these allegations, the liability of St. Mary Coop and/or Sterling is contingent on their members, employees, or someone else subject to their authority having caused or contributed to the condition of the roadway. See LSA-C.C. art. 2320.
In affidavits supporting their motions, managing employees of these defendants averred that these entities did not own, *1123 lease, or control the farms; that they did not participate in sugarcane farming operations; that they merely purchased and took possession of the sugarcane when it was delivered; and that none of their vehicles were involved in hauling anything at or near the accident site during the time immediately preceding the accident. These affidavits established that neither St. Mary Coop nor Sterling conducted any activities through their own employees that might have deposited mud on the roadway. Racca presented no evidence to the contrary to show she could establish the cause-in-fact element essential to her claim. Therefore, there could not be liability based on the activities of these entities through their own employees.
Furthermore, Racca could not demonstrate that Rodriquez and/or Rodriguez Brothers, the only sugarcane farmers named in the lawsuit, were the source of the mud on the road at the time of the accident. With the dismissal of her claims against them on summary judgment, any alleged vicarious liability of St. Mary Coop and/or Sterling could not be based on the actions or inactions of these farmers.
Racca submitted an affidavit from James David Whidden, an official with the State of Florida whose experience included three years as the harvesting foreman for a sugar growers cooperative in Florida. Relying on this affidavit, Racca asserts that St. Mary Coop and/or Sterling owed her an independent duty to regulate aspects of the sugarcane harvest by setting standards and refusing to accept produce from members and farmers who did not meet those standards.[3] Even accepting for the sake of argument the opinion of Racca's expert that these entities had a duty to attempt such regulation, any such standards could only be addressed to the activities of farmers who are members of the cooperative or who bring their produce to this mill. Racca produced no evidence that the mud on the roadway was deposited there by anyone who might have been subject to regulation by either St. Mary Coop or Sterling. Therefore, she did not establish that any amount of attempted regulation by the cooperative or the mill would have made any difference in this case.
Finally, although Racca's expert also opined that St. Mary Coop and Sterling had a duty to erect warning signs to advise motorists that certain areas of the highway might have mud and sugarcane debris during the harvest season, that contention has already been dealt with and rejected in a similar context in Bijeaux v. State, Dep't of Transp. and Dev., 97-224 (La.App. 3rd Cir.10/29/97), 702 So.2d 1088, 1092. In that case, the court found that even though a statute specifically authorized DOTD to install temporary warning signs of hazards in areas where sugarcane is harvested, it did not impose a legal duty on DOTD to provide such signs. See LSA-R.S. 48:346.1. The court noted that such a requirement "would necessitate hundreds of signs along Louisiana highways" during sugarcane harvesting seasons, which would be excessive and ultimately ineffective. Bijeaux, 702 So.2d at 1092. If there was no such duty on DOTD, which has primary responsibility for highway maintenance and a specific *1124 authorizing statute, there certainly could not be a duty on the sugar cooperative and/or sugar mill, whose responsibilities have nothing to do with highway maintenance and whose authority to regulate in this area was non-specific.
Racca failed to demonstrate that she would be able to establish at trial that St. Mary Coop or Sterling had any vicarious or independent liability under the facts of this case. Accordingly, we find no error in the granting of the motions for summary judgment and dismissal of her claims against St. Mary Coop and Sterling.

Liability of the Governmental Defendants
Racca claimed DPSC, St. Mary Parish, and the sheriff were negligent in failing to adequately and properly patrol Cypremort Road where the accident occurred, in failing to discover and warn of the regularly occurring hazard on this road, and in failing to take steps to remedy the hazard. In their motions for summary judgment, the governmental defendants essentially contended that (1) there was no defect, i.e., the condition of the road did not present an unreasonable risk of harm, (2) they owed no duty to warn because the condition was open and obvious, and (3) they did not have actual or constructive notice of the condition of the road at the time of the accident, and therefore did not breach any duty to warn or remove the condition.
St. Mary Parish supported its motion with the affidavit of its superintendent of public works, Jackie P. Hebert. The superintendent averred that he had checked with everyone who should or would have received any calls concerning problems on Cypremort Road on or before November 24, 1996, and had determined that neither he nor anyone else responsible for road maintenance for the parish received any notice of mud or debris on the road at that time. He also stated that no parish records reflected any such notice. Additionally, although parish maintenance crews regularly conducted roadside maintenance, none had been performed on the 23rd or 24th, which were a Saturday and Sunday. The work schedule showed that grass cutting had been done somewhere along Cypremort Road during the week preceding (and the week following) the accident, but there was no notice of a hazardous condition on the road during the regular maintenance activities. He further noted that the area where the accident occurred is a very lightly traveled and lightly populated, "extremely rural" area.
Henry C. LaGrange, the chief administrative officer for St. Mary Parish, averred in his affidavit that any calls "complaining of and/or providing notice of mud and/or debris on any Parish Road" would be made to him or to one of three other people, whom he named. He stated he did not have or receive any such notice. Each of the three possible persons to whom such calls would be referred declared via separate affidavits that he or she received no telephone call of this nature relative to Cypremort Road on or before November 24, 1996, and that nothing in the parish records reflected any such notice.
The sheriff submitted his own affidavit, which also stated that before the accident on November 24, 1996, no documented calls or requests were made to him or his office concerning debris or mud on Cypremort Road. He further stated that neither he nor any person associated with his office was aware of the specific conditions at the accident site that day.
DPSC supported its motion with a lieutenant's affidavit and its radio and desk logs for November 23 and 24; these established that there were no reported complaints or information regarding the condition of Cypremort Road on either day. It *1125 also submitted the deposition of the driver of the small pickup truck involved in the accident. Hebert said that he traveled Cypremort Road on his way to band practice about 6 p.m. and observed "chunks" of dirt in the opposing lane of travel, but "not really mud like all the way across the lane." He saw no other sugarcane debris on the road. He noticed there was more dirt in that lane than in the lane he was driving. Having grown up in the area, Hebert was aware that mud and debris was often tracked onto the roads during the harvesting season. He did not notify anyone of the condition. Hebert said rain continued "pretty hard" the whole time he was at band practice, which "must have made [the road] a little bit slicker." When he left band practice, he returned by the same route. The heavy rain had stopped, but it was still misting. Hebert said he saw the mud in his lane as he approached and knew he was getting ready to drive through it, but did nothing to slow or alter his driving until he felt his truck "fishtail" or hydroplane. At that point, he could not steer the vehicle. Hebert also said that several other band members had driven the same route after band practice about ten minutes before he traveled it; none of them experienced any difficulty at the site.
Racca opposed the motions with affidavits from several people who lived along Cypremort Road. Robert Dumesnll, the owner of the home where the band practiced, stated that on the day of the accident, the area where it occurred was covered with a substantial amount of mud and debris, making the road very slippery and difficult for vehicular traffic to safely traverse. He also said that before November 24, 1996, he had observed sugarcane harvesting operations being conducted in the nearby fields, resulting in mud and debris being tracked and dropped from the tractors and carts onto the roadway near the accident site. He said this was a common occurrence during sugarcane harvesting season and had caused accidents in that area in previous years. Finally, he stated that in previous years, the accumulation of mud and debris on the road sometimes "reached such proportions that the fire department has been called to wash said road with high-pressure hoses." An affidavit from another resident, Frances Wagner, said she encountered slippery conditions due to mud and debris on Cypremort Road when driving near the accident site earlier on the day it occurred. In addition to noting that this was a regular occurrence during sugarcane harvest, she stated that in previous years, the mud and debris on the road sometimes forced her to "take evasive actions such as driving in the opposing lane of travel" to avoid it.
Racca also noted that Sterling's president and CEO, Craig P. Callier, confirmed in his deposition that deposits of mud and debris on the roads were a common condition during sugarcane harvest. State Police Lieutenant John Medlin also acknowledged that these substances are tracked onto the roadways and presented a driving hazard when extreme amounts were present. Racca argues this evidence showed the governmental defendants had actual or constructive knowledge that mud and debris created a hazardous condition on the Cypremort Road at the time of the accident, and breached their duty to warn drivers or correct the condition.
Law enforcement officers of the state or its political subdivisions have authority vested in them by law to direct, control, or regulate traffic and enforce the provisions of the Traffic Code and regulations of the Department of Public Safety. LSA-R.S. 32:5; Blair v. Tynes, 621 So.2d 591, 596 (La.1993). See also LSA-R.S. 32:3(A), LSA-R.S. 36:401(B)(1), and LSA-R.S. 30:2531.3. When a law enforcement officer becomes aware of a dangerous traffic situation, he has the affirmative duty to *1126 see that motorists are not subjected to unreasonable risks of harm. Syrie v. Schilhab, 96-1027 (La.5/20/97), 693 So.2d 1173, 1177. The imposition of liability under general negligence principles requires proof that the defendant had actual or constructive knowledge of the risks and failed to take corrective action within a reasonable time. Hardenstein v. Cook Constr., Inc., 96-0829 (La.App. 1st Cir.2/14/97), 691 So.2d 177, 183, writ denied, 97-0686 (La.4/25/97), 692 So.2d 1093; Burdis v. Lafourche Parish Police Jury, 618 So.2d 971, 976 (La.App. 1st Cir.), writ denied, 620 So.2d 843 (La.1993).
The evidence submitted by the governmental defendants in support of their motions established that they had no actual knowledge that mud and debris along Cypremort Road had accumulated to a dangerous level on the day the accident occurred. It is only when those responsible become aware of a hazardous condition that they are required to take corrective action within a reasonable time.
Racca contends that her evidence shows the governmental defendants had constructive knowledge, since this was a widely-known, recurring condition, citing Hennigan v. Vernon Parish Police Jury, 415 So.2d 584 (La.App. 3rd Cir.1982) and Lognion v. Calcasieu Parish Police Jury, 503 So.2d 1092 (La.App. 3rd Cir.), writ denied, 507 So.2d 227 (La.1987). Constructive notice exists when the defect or condition has existed for such a period of time that it would have been discovered and remedied had the public body exercised reasonable care. Lutz v. City of Shreveport, 25,802 (La.App. 2nd Cir.5/4/94), 637 So.2d 636, 639, writ denied, 94-1487 (La.9/23/94), 642 So.2d 1294. However, in Lognion, the defendant had actual knowledge of the defective condition of a particular section of gravel road for at least five months, knew that it required grading twice a week to be properly maintained, but did not do what was necessary to keep it in safe driving condition. Lognion, 503 So.2d at 1097. Similarly, in Hennigan, the defendant knew there was a large hole in a wooden bridge, had "patched" the hole on several occasions, knew the repairs only sufficed for several days, but did nothing to warn of its existence or make permanent repairs. Hennigan, 415 So.2d at 585. These cases involve actual knowledge of a serious hazard at a particular location and the responsible governmental agency's conscious failure to take adequate corrective action.
In contrast, the undisputed facts in this case are that mud and debris are tracked onto innumerable roads in many locations for weeks and months during every sugarcane harvest season. Although this is indeed a widely-known, recurring condition, the evidence also shows it is not a hazardous condition at all times and in all places. It is only at certain times, in certain locations, and under certain circumstances that mud and debris accumulates to such an extent that a potential driving hazard is created. The evidence in this case is that at some times in some previous years, such an accumulation had occurred in the accident vicinity. That does not make this a constant or consistently recurring hazardous condition that existed for such a length of time that the governmental authorities can be charged with constructive knowledge of it.
Racca further argues that the governmental entities should have patrolled more often in order to discover such conditions. However, the evidence she offered does not show that on the day of the accident, the condition existed for such a length of time that regular patrols would have discovered it or would have had a reasonable time to correct it. We decline to find that the normal occurrence of mud on a rural road during the sugarcane *1127 harvesting season gives a governmental entity with the duty to patrol the roadway constructive knowledge as to an accumulation of mud that presents an unreasonable risk of harm. Moreover, we note that the lack of a plan to conduct periodic inspections of the roadways does not impute constructive notice of a defect to a public body. Jones v. Hawkins, 98-1259, 98-1288 (La.3/19/99), 731 So.2d 216, 220.
The duty to warn of or remedy an unreasonably hazardous condition does not arise until there is actual or constructive knowledge on the part of the defendants that such a condition exists. Even if we assume that the accumulation of mud on the roadway at the time of the accident presented a hazardous situation, Racca's evidence does not establish that this road condition was actually or constructively known to the governmental defendants. Therefore, under these facts and as a matter of law, there was no duty to act.
Based on the affidavits and other evidence offered by the three governmental defendants in support of their respective motions for summary judgment, the burden shifted to Racca to produce factual support sufficient to establish that she would be able to satisfy her evidentiary burden of proof at trial that DPSC, St. Mary Parish, and/or the sheriff had actual or constructive knowledge of a hazardous condition on Cypremort Road at the accident site on November 24, 1996. Because her evidence failed to establish a genuine issue of material fact on this essential element of her cause of action, we conclude the trial court properly entered summary judgment in favor of DPSC, St. Mary Parish, and the sheriff.

Decree
For the foregoing reasons, the judgments of the trial court are affirmed. Costs of this appeal are assessed to Pamela A. Racca.
AFFIRMED.
NOTES
[1] Judge Ian W. Claiborne, retired from the Eighteenth Judicial District Court, is serving as judge pro tempore by special appointment of the Louisiana Supreme Court.
[2] Racca dismissed the portion of the appeal pertaining to DOTD.
[3] The rights, powers, liabilities, and duties of agricultural cooperative associations are governed by LSA-R.S. 3:71 et seq. While there is nothing in these provisions specifically authorizing or requiring the warnings, training, or preventative measures suggested by Racca and her expert, the trial court recognized that the broad provisions of the statutory scheme might allow the cooperative to propound such regulations. The authority to do so, however, does not equate to a duty to do so. See Bijeaux v. State, Dep't of Transp, and Dev., 97-224 (La.App. 3rd Cir.10/29/97), 702 So.2d 1088, 1092.